ROSE MARIE SEWARD *et al.,* Plaintiffs-Appellants and Cross-Appellees, *v.* HOWARD E. GRIFFIN *et al.,* Defendants-Appellees and Cross-Appellants.

Third District   Nos. 82—377, 82—374, 82—375 cons.

Opinion filed June 10, 1983.—Rehearing denied August 31, 1983.

750

Jay H. Janssen and Jerelyn D. Maher, both of Peoria, for appellants.

Roland N. Litterst, of Covey and Litterst, of Peoria, for appellee Larry Coons.

Robert V. Dewey, Jr., of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Cook at Eighth, Inc.

David A. Nicoll and Daniel L. Johns, both of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellees Volkswagen of America, Inc., and Volkswagenwerk A.G.

JUSTICE SCOTT delivered the opinion of the court:

On September 15, 1976, in Havana, Illinois, Rose Seward and her daughter Gwen were the driver and passenger in a 1970 Volkswagen van that was struck by an Oldsmobile driven by Howard Griffin. Rose Seward and Gwen Seward received serious injuries as a result of the collision. Suit was filed by Rose Seward individually and by Robert Seward as parent and next friend of Gwen Seward against numerous defendants on numerous theories. Suit was filed against Howard Griffin, who died of causes unrelated to the accident here in question before the matter came to trial. Suit was filed against Cook at Eighth, Inc., under the Dramshop Act, alleging that the corporate defendant sold alcoholic liquor to the defendant Griffin immediately before the collision. Suit was filed against Larry Coons, alleging that Coons negligently entrusted the Oldsmobile to the defendant Griffin. Finally, suit was brought against Volkswagen of America, Inc., and Volkswagenwerk A.G. alleging that the design of the plaintiff's van was unreasonably dangerous.

After an extended trial, a Peoria County jury entered a judgment against the defendant Coons, and he appeals. The jury entered a judgment against the defendant dramshop, and it appeals. The jury entered a judgment against the defendants Volkswagen for Rose Seward, and Seward appeals, urging that the award of damages was inadequate and that errors tainted the jury's verdict, while the

defendants Volkswagen cross-appeal urging that a judgment *non obstante verdicto* should have been granted in the circuit court negating any recovery for Rose Seward; in the alternative, the defendants Volkswagen pray for an affirmance of the verdict in favor of Rose Seward, or if a new trial is ordered, then a trial on all issues, not just on the issue of damages. Lastly, the jury entered a verdict for the defendants Volkswagen and against Robert Seward on behalf of his daughter Gwen, and they appeal. The issues raised on each appeal will be considered separately.

### LARRY COONS APPEAL

On September 13, 1976, Larry Coons owned and operated a small used car sales business in Mason County, Illinois, known as Larry's Auto Sales. At about 1 p.m. that day, Howard Griffin came to the used car lot and negotiated with Larry Coons for the trade of a Cadillac he was driving for a 1968 Oldsmobile.

According to George Morrell, an employee of Larry Coons, an agreement to trade the two cars "even up" was reached, the assignment of title was signed by both Howard Griffin and Larry Coons in Morrell's presence as a notary public, and the State sales tax forms were made out and signed by both parties. Thereafter, Griffin took the license plates off the Cadillac, put them on the Oldsmobile, left the Cadillac on the lot, and drove away in the Oldsmobile.

A different version of events was testified to by Howard Griffin's ex-wife, Cathy Sue. According to Mrs. Griffin, on September 13, 1976, she and Griffin were on the lot twice. Larry Coons offered the Oldsmobile to Griffin for sale and offered to let Griffin try out the car. The first time, Griffin drove the car to Kilbourne, Illinois, with Cathy Sue driving the Cadillac. They returned the car to Coons' lot about an hour and a half later. At this second meeting, Mrs. Griffin told Coons that it was not a fair trade and that Howard Griffin could not trade since she owned the Cadillac and she would not trade her car. Mrs. Griffin further testified that on this occasion she told the defendant Coons that Howard Griffin had not had a drivers' license for at least 15 years due to his driving record and that he had been to Vandalia many times because of drunken driving. It was Mrs. Griffin's recollection that no sale and purchase took place on September 13, 1976, nor could such a transaction have been consummated without her consent. She testified that Larry Coons had knowledge of her interest in the Cadillac. Finally, when the executed assignment of title was examined subsequent to the September 15 collision, she asserted that the purported signature of Howard Griffin on the assignment

was a forgery.

Two days later on September 15, 1976, it was the same 1968 Oldsmobile that the defendant Griffin was driving when he pulled into the passing lane and struck the plaintiff's van head on. On appeal, the defendant Coons argues that the theory of negligent entrustment should not apply in the context of a seller and purchaser. In so contending, the defendant would have this court adopt the recollections of George Morrell while rejecting the recollections of Cathy Sue Griffin. This is contrary to the result reached by the Peoria County jury, in that they responded to a special interrogatory by finding that no sale took place. It is axiomatic that questions of credibility and believability of witnesses are within the province of the jury, and while there would appear to be some inconsistencies in the testimony of Mrs. Griffin, we cannot say that those inconsistencies rendered her testimony so suspect that it could not support the jury's finding on the special interrogatory.

Even if no sale and purchase took place, the defendant Coons believes that liability should not attach in this situation, that is in this commercial setting where the Oldsmobile was entrusted to a potential purchaser. It is correct to say that an automobile dealer is not liable for the negligence of a prospective purchaser who was allowed to drive the dealer's car for a trial or demonstration. (*Mosby v. Kimball* (1931), 345 Ill. 420, 178 N.E. 66.) The rule set down in the *Mosby* case establishes that negligence will not be imputed to the auto dealer, entrusting an automobile to a prospective purchaser, in the same manner that negligence is imputed to the master who entrusts an automobile to his servant or to the principal who entrusts an automobile to his agent. (Accord *Dean v. Ketter* (1946), 328 Ill. App. 206, 65 N.E.2d 572.) It is not necessary, however, to impute negligence to the automobile dealer where he himself has committed an independent act of negligence. Such an independent act of negligence occurs on the part of the automobile dealer where he lends the automobile to a person he knows is incompetent to drive or is reckless. (6 Blashfield, Automobile Law & Practice sec. 254.13 (3d ed. 1966).) Numerous courts have determined that entrusting a car to an unlicensed driver is tantamount to entrusting a car to an incompetent driver, and therefore an independent act of negligence. (*Kinney v. Smith* (1973), 95 Idaho 328, 508 P.2d 1234; *Barnes v. Zinda* (Tex. Civ. App. 1971), 464 S.W.2d 501; *Mundy v. Pirie-Slaughter Motor Co.* (Tex. 1947), 206 S.W.2d 587; *Hardwick v. Bublitz* (Iowa 1963), 119 N.W.2d 886; *Anthony v. Covington* (1940), 187 Okla. 27, 100 P.2d 461.) Further, many of those courts adopt the view that the negligence of the unlicensed driver

provides a causal connection necessary to establish liability in tort between the negligence of the entrusting automobile dealer and the injuries sustained by the plaintiff. This appears to be the preferred view. Where, as in the instant case, there was testimony that Larry Coons had actual knowledge that the defendant Griffin was an unlicensed driver, we conclude that entrusting the car to Griffin was an independent negligent act which proximately caused the injuries to Rose and Gwen Seward.

■ In addition, the defendant Coons cites as reversible error the circuit court's failure to use special verdict forms and special interrogatories which he proferred. Recently it was held that while the use of special interrogatories and special verdict forms is recommended and highly desired, no error occurs in the failure to use such forms unless a party is clearly prejudiced by the omission. (*Stromquist v. Burlington Northern, Inc.* (1983), 112 Ill. App. 3d 37, 444 N.E.2d 1113.) We have reviewed the verdict form and the instructions submitted to the jury and we conclude that in the case at bar, the jury was adequately charged. Consequently, we find no error in the circuit court's failure to utilize the special verdict forms and special interrogatories proferred by the defendant.

■ Also eliciting the objection of defendant Coons was the circuit court's failure to charge the jury with his instruction number 1. That instruction concerned the Illinois statute in effect in 1976 concerning the procedures for transferring the certificate of title to an automobile. Clearly, no instruction need be presented to the jury concerning an issue or issues not raised by the pleadings or proof. (*Shore v. Turman* (1965), 63 Ill. App. 2d 315, 210 N.E.2d 232.) It cannot be disputed that the jury in this case was called upon to decide whether a sale and purchase had been consummated, but in making that determination, the only issue to be resolved was whether George Morrell's recollection or Cathy Sue Griffin's recollection was to be believed. Mrs. Griffin supported her position that no sale and purchase took place with testimony that she was familiar with her husband's signature, and that the signature which appeared on the title document, being the title to the Oldsmobile, the signature which George Morrell purportedly witnessed, was not in fact Howard Griffin's signature. It is clear from the jury's verdict that they found Cathy Sue Griffin to be a more credible witness. As the instruction which was refused by the circuit court was not relevant to any issue before the jury, it was not error to refuse that instruction.

■ The defendant Coons contends that the instruction which he offered the court on the issue of negligent entrustment was wrong-

fully refused by the circuit court, while at the same time the instruction on that issue offered by the plaintiffs, which was read to the jury, misstated the law. Specifically, the defendant argues that only his instruction correctly states the necessary element of proximate cause. As we recited earlier, the negligence of the unlicensed driver provides the requisite causal connection between the negligence of the auto dealer in lending the car and the injury sustained by the plaintiff. (*Kinney v. Smith.*) With this understanding of the element of proximate cause, and having reviewed the instructions of both the plaintiff and the defendant Coons, we agree with the circuit court that the plaintiff's instruction correctly stated the issue for the jury.

■ Finally, the defendant Coons urges that the circuit court wrongfully ruled that there were two causes of action for two different plaintiffs contained in one count of the plaintiff's complaint. In count XIV of that complaint, Robert Seward, described as father and next friend of Gwen Seward, seeks compensation for his own property damage for the medical bills of Gwen as well as compensation in his representative capacity for Gwen's injuries. According to the defendant, the language "father and next friend" is a count in a representative capacity for Gwen Seward, who at the time of filing the complaint was a minor, and who since has reached her majority. The defendant posits that the single count XIV cannot properly state a cause of action by Robert Seward, individually, for medical bills, while also stating a cause of action for Gwen Seward for her injuries. The circuit court disagreed with the defendant. It is significant that the same practice rule which requires each separate claim or cause of action to be stated in a separate count (Ill. Rev. Stat. 1981, ch. 110, par. 33(2)) also instructs that pleadings shall be liberally construed with a view to doing substantial justice between the parties (Ill. Rev. Stat. 1981, ch. 110, par. 33(3)). This statutory directive has been said to place an emphasis on justice, not technicalities (*Phillips v. Chicago Housing Authority* (1980), 91 Ill. App. 3d 544, 414 N.E.2d 1133), to disdain procedural rigidities (*Fort v. Smith* (1980), 85 Ill. App. 3d 479, 407 N.E.2d 117), and to render unnecessary formal allegations (*Morse v. Nelson* (1977), 48 Ill. App. 3d 895, 363 N.E.2d 167). Indeed, the crucial test of any pleading is whether that document reasonably informs the opposite party of the nature of the claim which he is called upon to meet. (Ill. Rev. Stat. 1981, ch. 110, par. 42(2).) When count XIV of the complaint was filed Robert Seward had a cause of action as father of Gwen for her medical expenses. Robert Seward had a cause of action as next friend of Gwen and on her behalf for her injuries. Those causes of action were improperly combined in one count.

Subsequently, Gwen Seward became of age and thereby entitled to pursue the cause of action for her own injuries in her own right. Nevertheless, it cannot be earnestly said that count XIV of plaintiff's complaint did not inform the defendant that he would be called upon to meet a claim both for the medical expenses incurred in the treatment of Gwen Seward and for her injuries. Accordingly, we believe the circuit court did substantial justice in construing count XIV as stating two causes of action.

It is conceded by both the plaintiff Robert Seward and the defendant Coons that the jury returned a verdict in favor of the plaintiff for damages incurred as a result of Gwen Seward's medical expenses in the sum of $53,460, when the actual medical bills totaled only $21,191.66. Since no evidence existed to support a verdict in the greater amount, the award to Robert Seward can only be affirmed subject to remittitur.

### COOK AT EIGHTH, INC., APPEAL

On September 15, 1976, Cook at Eighth, Inc., owned and operated a tavern known as Two Sisters Tavern located at First and Carpenter streets in Springfield, Illinois. Two Sisters Tavern was a neighborhood bar with a local clientele. The owners were attempting to sell the tavern at the time, and consequently it was open a limited amount of hours with a very sparse supply of alcoholic beverages.

At trial, the evidence on the issue of sale or gift of intoxicating beverages to Howard Griffin against Cook at Eighth, Inc., consisted of the testimony of Cathy Sue Griffin. Mrs. Griffin testified that she had a conversation with Howard Griffin, her ex-husband, on the afternoon of September 16, 1976, while he was imprisoned in the Mason County jail. According to Mrs. Griffin's testimony, the defendant Griffin related the following story. On September 15, 1976, Howard Griffin had taken Mrs. Griffin to Springfield Memorial Hospital in Springfield, Illinois. After dropping her off at the hospital, he went to the nearby Two Sisters Tavern where he had a few shots of Anisette, then bought a quart of Anisette to take with him. Then he went to the Century Bar, also in Springfield, where he had a few drinks. He subsequently drank the quart of Anisette on his way to Kilbourne, Illinois, where he did more drinking, but at this point he did not remember what he drank or how much he drank because he was very intoxicated. In her testimony at trial, Mrs. Griffin recalled her husband telling her the size of the bottle he allegedly purchased and that he had consumed the bottle on his ride to Kilbourne, two details which she had not recalled earlier in a pretrial deposition.

The defendant Cook at Eighth, Inc., called three witnesses, Elda Blalock, the corporate president and treasurer, Novella Pacotti, the corporate vice-president and secretary, and William Stoneham, a regular patron at the Two Sisters Tavern. Each testified that the liquer Anisette was never sold nor served in the Two Sisters Tavern.

In its appeal the corporate defendant asks us to find that the circuit court erred in admitting the testimony of Cathy Sue Griffin concerning the jailhouse declarations of the defendant Howard Griffin. By any standard definition, these out-of-court declarations testified to by Mrs. Griffin were hearsay. Testimony concerning the declarations can only be admissible if it meets the criteria of one of the exceptions to the rule which bars all hearsay testimony. The circuit court held and the plaintiff on appeal urges that Mrs. Griffin's testimony concerned declarations against interest, an exception to the hearsay rule. Declarations against interest must meet four requirements. First, the declarant must be excusably unavailable at the time of trial. Second, the declarant must have possessed competent knowledge of the facts about which his declaration was made. Third, the declaration must have been against his pecuniary interest. Fourth, the declarant must have had no motive to falsify his statement. (*Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192, 373 N.E.2d 1060.) The corporate defendant urges that the declarations testified to by Mrs. Griffin fail to meet one or more of these requirements. The defendant relies on four similar cases: *Jones v. DeWig* (1974), 25 Ill. App. 3d 423, 323 N.E.2d 475, *Naylor v. Gronkowski* (1972), 9 Ill. App. 3d 302, 292 N.E.2d 227, *Merritt v. Chonowski* (1978), 58 Ill. App. 3d 192, 373 N.E.2d 1060, and *Felker v. Bartelme* (1970), 124 Ill. App. 2d 43, 260 N.E.2d 74. The first two cases, *Jones* and *Naylor,* involve declarations concerning intoxication made under the pressure of pending criminal proceedings with knowledge that intoxication was a potential mitigating factor or defense in the criminal proceeding. Therefore, the court concluded in both cases that there was a probable motive to falsify the declaration, thereby rendering the declaration inadmissible hearsay in a civil prosecution distinct from the criminal proceeding. In the *Merritt* case, an intoxicated person made declarations concerning his intoxication, and subsequent thereto the declarant was involved in an automobile accident while he was driving the automobile. The *Merritt* court concluded that the declarations concerning intoxication were inadmissible hearsay, but for reasons different than the court in *Jones* and *Naylor.* In the *Merritt* case, it was determined that the declarant had no pecuniary interest at stake until after the automobile accident which gave rise to potential civil liability. Since the declarations were

made prior to the accident, they were made at a time when they did not jeopardize the pecuniary interest of the declarant. We find the facts of the case *sub judice* substantially distinguishable from the facts of *Jones, Naylor* and *Merritt*. The declarant in this case, defendant Griffin, was not under the pressure of a pending criminal proceeding, and unlike the facts in both *Jones* and *Naylor*, there is no indication that the defendant Griffin had knowledge that intoxication might be a mitigating factor or a defense to criminal charges. Likewise, the declarations of defendant Griffin were made after the automobile accident, at a time when Griffin faced the potential for civil liability, in derogation of his pecuniary interest.

The court's decision in *Felker v. Bartelme* is not so readily distinguishable from the facts in the case before us. In *Felker,* the declarant made statements concerning his own state of intoxication which the court ruled were self-serving, noting that the declarant could have had a reason for fabrication if he assumed the plaintiff would be more likely to seek relief from a dramshop rather than from himself. No authority is cited by the *Felker* court, and the rationale of the *Felker* holding is only valid if the declarant is charged with knowledge of the alternative legal remedies available to the plaintiff. In another decision with extensive citation to authorities on the declaration against interest exception to the hearsay rule, a different holding is reached. (*Frazier v. Burks* (1968), 95 Ill. App. 2d 51, 238 N.E.2d 78.) The court in *Frazier* considers a similar declaration against interest, that is a declaration where the declarant describes his own state of intoxication, and then considers the admissibility of that declaration in light of numerous leading authorities on exceptions to the hearsay rule. The result of that consideration is the conclusion that the declaration was admissible in evidence, and that the declarant had no probable motive to falsify. We believe the *Frazier* decision is the better statement of the law, and its extensive citation to authority contrasted with the dearth of authority in *Felker* supports our conclusion.

■ In short, we believe all four requirements necessary to permit a hearsay declaration to be admitted into testimony as one against interest have been met with regard to the declarations that Howard Griffin made to Cathy Sue Griffin. Undeniably, Howard Griffin was not available at the time of trial. The potential criminal punishment facing the declarant necessarily involved his pecuniary interest, since it was likely to subject him to fine, loss of earnings through incarceration, and to legal and other expenses involved in defending himself. There is no reason to doubt the competence of Howard Griffin in recalling the events which occurred on the evening of September 15,

760

1976. Finally, for the reasons we have discussed, and in reliance on the case of *Frazier v. Burks,* we do not believe the declarant had a motive to falsify his statement.

■ The corporate defendant, Cook at Eighth, Inc., asks us to find that the jury verdict against it was against the clear and manifest weight of the evidence. In so doing, the defendant points to the testimony of Elda Blalock, Novella Pacotti and William Stoneham, to the effect that the Two Sisters Tavern never stocked or sold Anisette. There is a clear conflict in the evidence. There is the testimony of the corporate defendant's principals that it could not have been liable, and there is the declaration of Howard Griffin that it was liable. The task of resolving conflicts in the evidence is the province of the jury, and if the jury's resolution of that conflict is supported by credible evidence, this appellate court will not substitute its judgment for that of the jury.

The defendant Cook at Eighth, Inc., raises the same issue on appeal as did the defendant Coons concerning the improper inclusion in one count of causes of action by Robert Seward individually as the father of Gwen and by Robert Seward in his representative capacity as next friend of Gwen. For the reasons set forth earlier in this opinion, we believe the circuit court did substantial justice between the parties by permitting the plaintiffs to present evidence on both causes of action at the trial which occurred below. The defendant here most certainly knew, from the allegations of the complaint on file, that both causes of action would be pursued.

■ The verdicts against the defendant, Cook at Eighth, Inc., can only be affirmed subject to remittitur. The verdicts returned by the Peoria County jury were in excess of the statutory limits set forth in the Dramshop Act. A verdict was returned for Rose Marie Seward for her personal injuries in excess of the statutory maximum, and that verdict should be reduced to $15,000. A verdict was returned for Robert L. Seward for his loss of means of support in excess of the statutory maximum, and that verdict should be reduced to $20,000. A verdict was returned for Robert L. Seward for his property damage by virtue of the medical expenses incurred by his minor daughter, and that verdict was in excess of the statutory maximum and should be reduced to $15,000. A verdict was returned for Gwen Seward for her personal injury in excess of the statutory maximum, and that verdict should be reduced to $15,000.

ROSE AND GWEN SEWARD APPEAL

The plaintiffs, Rose and Gwen Seward, appeal the verdicts ren-

dered by the jury in their cause of action against the defendants Volkswagen. They allege that certain errors occurred in the trial which were prejudicial, and for that reason they request a judgment notwithstanding the verdict as to the plaintiffs Gwen and Robert Seward, or in the alternative a new trial, and a new trial on the issue of damages as to the plaintiff Rose Seward, or in the alternative a new trial on all issues.

■ The defendants Volkswagen were permitted to question before the jury an accident reconstruction expert. The plaintiffs objected to the admission of this testimony because they allege that it was unnecessary to the issue before the court and it was in conflict with certain eyewitness testimony presented as to the events surrounding the collision. It is a correct statement of the law that where eyewitness testimony is available, the use of a reconstruction expert is not warranted unless the testimony of the eyewitnesses is incredible, unbelievable, or contrary to accepted ordinary scientific law. There is no place for the opinion of the reconstruction expert if the determinative facts are otherwise established by credible physical or eyewitness evidence. (*Abramson v. Levinson* (1969), 112 Ill. App. 2d 42, 250 N.E.2d 796.) On the other hand, expert testimony on the reconstruction of an automobile accident is admissible where it is necessary to rely on the knowledge and application of principles of physics, engineering and other sciences beyond the ken of the average juror. (*Miller v. Pillsbury Co.* (1965), 33 Ill. 2d 514, 211 N.E.2d 733.) We have reviewed the transcript of proceedings as it applies to the testimony here in question. From that review, we find that the reconstruction expert limited his testimony to the physical science concept of Delta-V. According to the defendants' expert, one of the most critical determinations in evaluating the potential of an impact to create injury is the change in velocity of the colliding vehicles, a change measured by the concept of Delta-V. Many factors enter into computing a velocity change including the relative closing speed of the vehicles, the angle of impact, the relative weights, and the impact resistant characteristics of the vehicles. The complexity of these computations is undoubtedly beyond the ken of the average juror. The necessity for this type of testimony arises by the nature of the allegations against the defendants Volkswagen. The defendants here are not alleged to have caused the accident. Rather, the defendants Volkswagen are alleged to be responsible for the "second impact" injuries, those injuries which the plaintiffs would not have incurred if the Volkswagen van in question had been a reasonably crashworthy vehicle. To separate the injuries received in the "first impact" and the injuries received in the

"second impact," we believe it can reasonably be argued that the jury must evaluate the potential of that first impact, and the reconstruction expert's explanation of the change of velocity or Delta-V would be appropriate in that regard. Any testimony of the expert which tended to contradict the testimony of eyewitnesses was merely incidental to the primary thrust of the testimony of the reconstruction expert, all of which concerned Delta-V. The demonstrative evidence which was used to illustrate and clarify the expert's testimony was clearly admissible, as the use of this type of evidence is within the broad discretionary power of the circuit judge (Hunter, Trial Handbook for Illinois Lawyers sec. 50:1 (4th ed. 1972)), and that discretion is not abused where visual aids are permitted to understand rather complex scientific testimony.

■■ The plaintiffs also object to the admission into evidence of defendants' exhibit No. 40, certain Federal motor vehicles safety standards, urging that those standards are not relevant to the van in question. We note that some of the Federal standards set forth in exhibit No. 40 were applicable to the 1970 Volkswagen van where other standards included in that same exhibit were made applicable at a later date. While this may affect the weight which the jury ascribes to this evidence, it does not affect its admissibility after the supreme court's definitive opinion on this subject in *Rucker v. Norfolk & Western Ry. Co.* (1979), 77 Ill. 2d 434, 396 N.E.2d 534. Therein the court determined that evidence of compliance with Federal standards is relevant to the issue of whether a product is defective as well as the issue of whether a defective condition is unreasonably dangerous.

■■ At the trial which occurred below, the plaintiffs attempted to admit into evidence the front portion of a Volkswagen van, similar to the van involved in the collision, which had been the subject of impact tests conducted by two of plaintiffs' experts. This partial van was denied admission into evidence, even though an actual Volkswagen van offered into evidence by the defendants was admitted. The plaintiffs urge that this was prejudicial error. While trial courts have only a limited right to exclude such tangible evidence as is material and relevant (*Virgil v. New York, Chicago, & St. Louis R.R. Co.* (1952), 347 Ill. App. 281, 106 N.E.2d 749), relevancy of such real evidence is directly related to its structural similarity, that is its design similarity, to the van which the plaintiffs allege was unreasonably lacking in crashworthiness. In the case of the plaintiffs' proffered partial van, no witness testified that it was structurally similar to the van involved in the collision, and numerous components even of the partial van had been removed from their original configuration. Under these

circumstances, it cannot be said that the trial court abused its discretion in denying the admissibility of plaintiffs' exhibit into evidence.

■■■ Also denied admission into evidence was what plaintiff alleged to be a repair manual for a 1970 Volkswagen van. Plaintiffs believe this denial was in error. Documentary evidence such as the alleged repair manual must be authenticated before it can be admitted into evidence. (29 Am. Jur. 2d *Evidence* sec. 849 (1967).) We find absent from this record the kind of testimony which would establish that the alleged repair manual was what it was represented to be. Without such authentication, the circuit court correctly denied admission of the exhibit as offered.

■■■ During the court of the trial in the court below, the defendants Volkswagen presented evidence to demonstrate that Rose Seward and Gwen Seward were not wearing seat belts at the time of the collision. Further evidence was presented which tended to show that in a collision of this type, seat belts can reduce the injuries inflicted by the forces of impact. While the plaintiffs do not object to the testimony presented by the defendants, they believe the circuit court erred when it denied them an opportunity to present evidence as to the percentage of the motoring public which regularly use seat belts. They contend that such evidence would show that a small percentage of the motoring public does use seat belts, and therefore the defendants Volkswagen should have reasonably anticipated that the 1970 van would be used by persons not wearing the seat belts with which it was equipped. Several Illinois decisions have made it clear that evidence of the use or nonuse of seat belts is not admissible as to the issue of liability, but is admissible as to the evidence of damages. (*Mount v. McClellan* (1968), 91 Ill. App. 2d 1, 234 N.E.2d 329; *Josel v. Rossi* (1972), 7 Ill. App. 3d 1091, 288 N.E.2d 677; *Hale v. Cravens* (1970), 129 Ill. App. 2d 466, 263 N.E.2d 593.) Indeed, it has been said that there is a duty, based on the common law standard of ordinary care, to use available seat belts independent of any statutory mandate. (*Mount v. McClellan,* citing *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 149 N.W.2d 626.) Where the law establishes a duty to wear seat belts to mitigate any potential injury, it is irrelevant to the jury's consideration whether a large portion of the population or a small portion of the population actually avail themselves of the protections afforded by the belts. The duty is imposed by law. The only questions for the jury to determine are whether the belts were worn and to what extent the belts might have mitigated injuries if they had been worn. We find no error in the trial court's refusal to permit the plaintiffs to present the type of evidence here in question.

■ The plaintiffs sought to introduce into evidence eight photographs reflecting their condition during treatment in the hospital immediately following the accident. Admission of those photographs into evidence was denied by the circuit court. Plaintiffs' contention on appeal is that this constituted reversible error. We disagree. Photographs of this nature, which demonstrate unpleasant and sometimes gruesome physical conditions, may be properly admitted into evidence. Merely because the photographs might arouse feelings of horror or indignation, or might inflame the passions of the jury, should provide no basis for excluding the photographic evidence. (*Darling v. Charleston Community Memorial Hospital* (1964), 50 Ill. App. 2d 253, 200 N.E.2d 149.) Nevertheless, the admission of this type of evidence is subject to the broad discretion of the trial court. Photographs which vividly and accurately depict an injury are relevant to the issue concerning the nature and severity of the injury and the resultant pain and suffering. The utilization of such evidence should be encouraged. (*Kallas v. Lee* (1974), 22 Ill. App. 3d 496, 317 N.E.2d 704.) Yet, where the evidence is admissible, even where its admission is to be encouraged, it is not error to deny the admission of such evidence where ample opportunity is presented to graphically describe with oral testimony the nature of the injuries incurred. (*Kallas v. Lee.*) From the record before us, it is apparent that the plaintiffs were able to admit in the record substantial testimony which graphically described the injuries they received.

■ Finally, the plaintiffs contend that the general verdict of the Peoria County jury was inconsistent with a special verdict which they rendered. In answer to a special verdict question, the Peoria County jury affirmed that the design of the 1970 Volkswagen van presented an unreasonably dangerous condition. The plaintiffs urge that the verdict in the amount of $9,000 for Rose Seward, being substantially less than her proven medical expenses, and the failure to render a verdict for Gwen Seward or Robert Seward, are contrary as a matter of law to the special finding. The measure of damages applicable to a design defect case of this type convinces us that the plaintiffs' position is not correct. Where the plaintiffs complain that the design of the 1970 Volkswagen van was not crashworthy, and therefore their injuries were enhanced by the unreasonably dangerous design, the defendants Volkswagen are liable for damages only to the extent that the defective design enhanced the injuries which would have been received in any event as a result of the first impact. (*Fink v. Chrysler Motors Corp.* (1974), 16 Ill. App. 3d 886, 308 N.E.2d 838.) The fact that the 1970 van was not crashworthy in the opinion of the jury is not the

same as saying that all of the injuries received by the plaintiffs were proximately caused by that defective design. Photographs of the 1970 van after the collision indicate that the van was far more severely impacted on the driver's side of the vehicle where Rose Seward was seated than was the case on the passenger side of the vehicle where Gwen Seward was seated. It would be consistent with the evidence presented if the jury had concluded that all of Gwen Seward's injuries were proximately caused by the impact with the Oldsmobile driven by Howard Griffin and that none of her injuries were caused or enhanced by the design defects in the van. It would also be consistent and supported by the evidence if the jury had concluded that only $9,000 of the damages sustained by Rose Seward were proximately caused by the defective design of the Volkswagen van. While it is impossible to determine with certainty which injury or injuries received by Rose Seward were, in the opinion of the jury, proximately caused by the defective design, that is the tortious act, of the defendants Volkswagen, one plausible explanation of the jury's verdict is set forth in the brief filed by the defendants Volkswagen before this court. The evidence in the trial below indicated that the lower left driver's area of the Volkswagen van was the point of greatest impairment of the passenger compartment of the van. Robert Seward testified that he found his wife's left shoe wedged in the floor board following the accident. Therefore, the jury could have concluded that this point of greatest of impairment was the only manifestation of the design defect, and the jury could have concluded that the injury to Rose Seward's left ankle was the only injury for which the defendants Volkswagen were liable. In short, we find evidence in the record to support the verdict of the jury.

VOLKSWAGEN CROSS-APPEAL

The defendants Volkswagen have appealed the verdict in favor of Rose Seward and the answer to the special interrogatory concerning the existence of an unreasonably dangerous design, contending on appeal that considering all the evidence most favorably to the plaintiff, Rose Seward, the verdict cannot stand. Specifically, the cross-appellants argue that the record is devoid of any evidence of alternative design feasibility and of any evidence that the injuries to Rose Seward were proximately caused by the allegedly defective design. It is further argued that evidence on both of these points is necessary to state a *prima facie* case for a product's defective design, and where these elements of the *prima facie* case are absent, a judgment *n.o.v.* should have been granted.

■■■ In the leading Illinois authority on the subject of alternative design feasibility, *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, our supreme court determined that the Illinois rule provides that a plaintiff need not *plead* alternative design feasibility in a products design case. The court left open the question of whether a plaintiff must *prove* alternative design feasibility. What must be proved, according to the *Kerns* court, is the unreasonably dangerous nature of the defect in design. Clearly, evidence of alternative design feasibility is relevant to the issue that must be proved. In light of the *Kerns* decision, and until the Illinois Supreme Court determines otherwise, we believe the rule of law in Illinois is that evidence of alternative design feasibility is relevant and admissible in a design defect case, but it is not an essential element of such a case if the finder of fact can be persuaded in the absence of such evidence that the defect in design rendered the product unreasonably dangerous.

■■■ In further support of the cross-appellant's contention that judgment *n.o.v.* should have been entered in the circuit court, we are asked to consider whether there was sufficient evidence that the alleged design defect proximately caused any of the plaintiff Rose Seward's injuries. The plaintiff presented testimony by its expert that all of Rose Seward's injuries were enhanced by the defective design of the Volkswagen van. It is apparent from the verdict that the jury rejected large portions of this witness' testimony. In fact, it appears likely that the jury accepted the testimony of the cross-appellant's expert, Dr. Mackay, in arriving at their decision as to which, if any, of Rose Seward's injuries were proximately caused by the alleged design defect. It was Dr. Mackay who explained that Rose Seward's left ankle injury was likely caused by direct contact and loading applied through the floor of the Volkswagen van at the time of impact. With this evidence, the jury could have concluded that because of a defect in design, because the Volkswagen was insufficiently crashworthy, the integrity of the passenger compartment was unreasonably impaired at the time of impact in the area of the vehicle's floor, the area where Rose Seward's foot and ankle were injured. It follows then that the jury's decision was not against the manifest weight of the evidence, and the circuit court did not err in denying the cross-appellant's request for judgment *n.o.v.*

In the brief of the cross-appellants, additional arguments are set forth for our consideration, but only in the event that we granted the relief requested by Rose and Gwen Seward. Inasmuch as we have previously determined that the errors cited by the appellants Seward do not merit reversal of the circuit court judgment, we find it unneces-

sary to consider these additional arguments of the cross-appellants.

For the reasons we have set forth above, we believe the judgment of the circuit court of Peoria County should be affirmed, subject, however, to the plaintiffs' acceding to the remittitur of the judgments as previously described.

Affirmed subject to remittitur.

STOUDER, P.J., and HEIPLE, J., concur.