DOLORES BARTH, Adm'r of the Estate of Richard L. Barth, Sr., Plaintiff-Appellant, v. INTERNATIONAL HARVESTER COMPANY, Defendant-Appellee.

First District (5th Division)   Nos. 84—1934, 84—2434 cons.

Opinion filed September 11, 1987.

Timothy M. McCarthy, Law Offices of Dennis M. O'Brien, and Michael J. McArdle, Chartered, all of Chicago, for appellant.

Lord, Bissell & Brook, of Chicago (Thomas J. Burke, Jr., Hugh C. Griffin, and Diane I. Jennings, of counsel), for appellee.

JUSTICE PINCHAM delivered the opinion of the court:

Plaintiff, administrator of her deceased husband's estate, brought an action on his behalf against defendants, Crete Township and International Harvester, for injuries the deceased sustained when the International Harvester tractor he was driving on a Crete Township roadway turned over. During jury deliberations Crete Township paid plaintiff a sum of money in settlement of plaintiff's claim against it. Subsequently, the jury returned a $2 million verdict in favor of plaintiff and against Crete Township. The jury also returned a verdict against plaintiff and in favor of International Harvester. Plaintiff appeals from the judgment entered on the verdict for International Harvester.

On appeal, plaintiff contends that the trial court erred in admitting into evidence and allowing the jury to view a videotape which demonstrated the tractor's turning capabilities, and that the trial court abused its discretion when it refused to allow into evidence photographs of a cab-enclosed tractor which plaintiff had taken from the 1941 edition of Prairie Farmer Magazine.

On September 25, 1976, Richard Barth was seriously injured when the tractor manufactured by the defendant, International Harvester, and driven by Barth overturned. The tractor was a Farmall M International Harvester tractor which Barth had been using to bale hay. At approximately 9 p.m., Barth drove the tractor from the field and proceeded north on State Line Road, a two-lane gravel road located in Crete Township, Illinois. Barth's tractor speed was estimated to be between five and eight miles per hour. When Barth reached the intersection of State Line and Bemis Road, he made a left turn onto Bemis Road and proceeded west. The two neighbors who had been baling hay with Barth and were following him testified that they saw Barth complete his left turn onto Bemis Road. They could not see Barth, however, after he made the turn and as he proceeded west on Bemis Road. When the neighbors completed their left turn off of State Line Road west onto Bemis Road, they saw Barth's tractor approximately 70 feet west of the intersection, lying on its right side, on the south side of Bemis Road. The tractor was headed in a southwesterly direction, with the front section partially up the embankment on the far south side of a ditch. The front end of the tractor had broken through a fence at the top of the embankment. The right rear wheel was in the ditch and Barth's legs were pinned underneath the tractor. Barth suffered serious head injuries as a result of the accident.

At the time of the accident, Bemis Road was a two-lane blacktop

road of chipped gravel and tar. Numerous witnesses testified that at the time of the accident Bemis Road was in serious disrepair, with deep ruts and many large potholes.

The Farmall M tractor was manufactured by International Harvester in December 1941 and purchased by Barth in June 1979. The tractor was built similar to a tricycle, with two small wheels close together in the front center and two large wheels on each side of the tractor at the rear. This construction design allowed the tractor to run between crop rows. The width between the rear wheels could be adjusted to accommodate different spacing between the crop rows. The tractor's rear wheels were set $77\frac{1}{2}$ inches apart at the time of the accident.

The tricycle design was introduced in 1924 and was thereafter adopted by all tractor manufacturers. The tractor had 36 horsepower and weighed approximately 4,700 pounds. It had a 20- to 24-inch clearance under each axle and was designed to be used with other farm implements, such as mounted corn pickers and cultivators.

Plaintiff called David MacCullom, a consulting safety engineer, and Dr. Wyman Johnston, an associate professor of engineering at Texas A & M University, as expert witnesses in support of his claim that International Harvester had been negligent in the design and manufacture of the Farmall M tractor. Both witnesses testified that the Farmall M tractor had a propensity to overturn while turning corners at normal speed. On cross-examination Dr. Johnston conceded that the tractor went approximately 70 feet west on Bemis Road before the tractor turned over.

Plaintiff's experts further testified that International Harvester was negligent in failing to equip the tractor with a rollover protection structure. It was agreed by the parties, however, that no company in the farm tractor manufacturing industry developed a rollover protection structure until the 1960s. Plaintiff's experts further agreed that a rollover protection structure would not have prevented plaintiff's turnover.

Finally, plaintiff's experts stated that International Harvester was negligent in failing to warn of the danger of the tractor's propensity to rollover, despite the fact that the operator's manual for the Farmall M tractor advised tractor operators to reduce their speed prior to making a turn or applying the brakes. There was also a yellow decal on the tractor which warned tractor operators to reduce their speed when turning or applying the brakes.

The defendant, International Harvester, called John Zich, a retired engineer with Ford Motor Company's tractor division, T. David

McFarland, a farmer representative of the American Society of Agricultural Engineers, and William Borghoff, an International Harvester engineer, as its expert witnesses. They testified that the Farmall M tractor met the applicable industry design and manufacturing standards and that the machine had no propensity to turn over when operated properly. Like any other tractor, they testified, it could turn over if operated carelessly on steep or uneven terrain, such as the Bemis Road south embankment where the tractor was found at the time of Barth's accident. Harvester's experts also agreed with plaintiff's experts' testimony that an effective rollover protection structure was not developed for farm machinery until the late 1960s.

Finally, International Harvester's experts testified that the warning in the operator's manual and the warning decal on the tractor provided ample warning of the dangers involved.

Barth and Crete Township settled Barth's claim against Crete Township while the jury was deliberating and before the jury verdict. Thereafter, the jury returned a $2 million verdict in favor of plaintiff against Crete Township. The trial court reduced the verdict to $1 million, commensurate with the jury's finding that as between plaintiff and Crete Township, 50% of the negligence was attributable to plaintiff's action. The jury also found in favor of the defendant International Harvester on plaintiff's allegations that International Harvester was negligent. Judgment was entered by the trial court on the jury's verdict in favor of International Harvester and against plaintiff.

Plaintiff contends that the trial court erred when it allowed into evidence and permitted the jury to see defendant's videotape of an International Harvester Farmall M tractor, identical to the one involved in plaintiff's accident, making left turns at varying speeds from northbound on State Line Road to westbound onto Bemis Road when the conditions shown in the videotape were not substantially similar to the conditions on the day of the accident. Defendant asserts that the videotape was not presented as a reenactment of the accident, but, rather, it was presented to rebut plaintiff's expert testimony that the tractor could not safely turn a 90° corner at a speed in excess of five miles per hour and to further demonstrate that the Farmall M tractor was capable of safely turning corners under normal driving conditions and speeds.

■ International Harvester's videotape showed a Farmall M tractor, identical in make, model and design to plaintiff's tractor, turning left from State Line Road westbound onto Bemis Road at different speeds. At the conclusion of oral argument of the cause before this court, we viewed the videotape. We conclude that the tape did not

purport to be a reenactment of the accident. The videotape was simply a demonstration of the left-turning capabilities of the Farmall M tractor under normal operating speeds and conditions from northbound on State Line Road to westbound on Bemis Road.

Bemis Road had been repaved since the accident and the jury was advised of this fact prior to viewing the videotape. In order to avoid confusion or mislead the jury, before showing the videotape to the jury, the trial court deleted a portion of the videotape which showed the tractor being driven off the side of Bemis Road at the point of the accident. Plaintiff's attorney stated to the trial court that he had no objection to the limited turning demonstration shown on the videotape. In fact, plaintiff had sought permission to use the videotape as evidence in plaintiff's case. Plaintiff's counsel was also afforded the opportunity to cross-examine Borghoff, the driver of the tractor in the videotape, on all aspects of the demonstration, including the difference between the conditions existing on the day of the accident and at the filming of the videotape.

Moreover, the admission of the videotape did not constitute error. Plaintiff's counsel and plaintiff's expert witnesses conceded that Bath's tractor did not turn over while he was turning at the intersection northbound off of State Line Road westbound onto Bemis Road, but, rather, the tractor turned over after it had traveled approximately 70 feet west on Bemis Road. Plaintiff asserts that the turnover was caused by the tractor's inability to negotiate the left turn at any speed. However, plaintiff's experts do not explain how a tractor traveling north on State Line Road and making a 90° left turn westbound onto Bemis Road could turn over on its right side and land facing southwest in a ditch on the south side of Bemis Road approximately 70 feet west of the turning point. It would appear that if the tractor was unable to negotiate the 90° left turn from northbound to westbound, the tractor would have come to rest on its right side on the north side of Bemis Road, either in or immediately off the intersection at State Line Road, instead of 70 feet west of the intersection on the south side of Bemis Road facing south and west.

Plaintiff's theories were that the turning capabilities of the tractor were faulty and that the roadway was poorly maintained. The jury was not confused by the repaired condition of Bemis Road in the videotape since the jury returned a verdict against Crete Township, whose responsibility it was to maintain the road on which the accident occurred.

We conclude that the videotape was not a reenactment of the accident, nor was it purported to be. The videotape was a demonstration

of the Farmall M tractor's turning ability at various speeds presented to rebut plaintiff's expert testimony that the tractor could not safely turn a corner under normal operating speeds. The trial court did not err in admitting the videotape into evidence and in allowing the jury to view it.

■ Plaintiff next contends that the trial court erred in refusing to admit as demonstrative evidence photographs taken from a 1941 Prairie Farmer Magazine which depicted someone sitting in the enclosed cab of a Minneapolis-Moline tractor. The decision whether to admit demonstrative evidence lies within the sound discretion of the trial court. (*Levenson v. Lake-to-Lake Dairy Cooperative* (1979), 76 Ill. App. 3d 526, 536, 394 N.E.2d 1359.) Discretion is properly exercised to exclude such evidence where no foundation has been laid to verify that the proffered evidence is an accurate portrayal of facts relevant to the instant case. *Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 763, 452 N.E.2d 558.

■ The judge ruled on the proffered demonstrative evidence as follows:

> "[I]t's too prejudicial to allow a photograph unexplained ***, the minimal copy regarding the comfort of the driver, *** introduced at this time to rebut the testimony of those witnesses [International Harvester's experts' testimony that a rollover protection structure had not been developed in 1941]. I really think it's highly prejudicial to the defendant, Harvester, so I'll deny it."

One of the photographs offered as demonstrative evidence contained the caption:

> "The modern tractor? Look at the Minneapolis-Moline which is complete with enclosed cab, headlights, heater, self starter and radio. The farmer may now have comfort as well as power."

The only foundation which plaintiff offered to support the introduction into evidence of the photographs was the testimony of a Northwestern University librarian that the photographs were taken from a 1941 edition of the Prairie Farmer Magazine. Plaintiff failed to establish that the "comfort" cab of the tractor shown in the magazine photographs was intended to be a rollover protection structure or that it would have offered protection in a tractor rollover, or that it was anything more than what it appeared to be, *i.e.*, an enclosure to keep the operator comfortable and protected from the weather. It is important to note that plaintiff's experts had previously testified that an effective rollover protection structure had not been developed by any tractor manufacturer until the late 1960s, when International Harvester

and the John Deere Company began incorporating such equipment in their tractors in 1967. There is no evidence to establish that the photographs of the cab of the Minneapolis-Moline tractor were relevant to or would explain how Barth's accident or resulting injuries could have been prevented. The trial court permitted plaintiff to use the photographs in the examination of defendant's expert witness to elicit testimony that the photographs depicted a tractor in 1941 with an enclosed cab and not an operator protection device.

The trial court did not abuse its discretion in refusing to admit into evidence plaintiff's photographs taken from the 1941 edition of the Prairie Farmer Magazine which showed a Minneapolis-Moline tractor with an enclosed cab.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN, P.J., and LINN, J., concur.