No. 3--01--0217

 IN THE APPELLATE COURT OF ILLINOIS
 THIRD DISTRICT
 A.D., 2001

BRANDY A. EYRICH, ) Appeal from the Circuit Court
 ) of the 10th Judicial Circuit,
 Plaintiff-Appellant, ) Tazewell County, Illinois
 )
 )
 )
 v. ) No. 99-L-39
 )
 )
The Estate of CORY L. WALDEMAR, )
deceased, JANA M. RIDINGS, and )
GRAYBOY CYCLE CENTER, INC., an )
Illinois Corporation, d/b/a )
GRAYBOY KAWASAKI, ) Honorable
 ) Scott A. Shore
 Defendants-Appellants. ) Judge, Presiding.

 JUSTICE HOLDRIDGE delivered the Opinion of the Court:

 Plaintiff, Brandy A. Eyrich, appeals from a judgment of the
circuit court of Tazewell County granting defendant's, Grayboy Cycle
Center, Inc. (Grayboy), motion for summary judgment on plaintiff's
negligent sale and entrustment claim. The trial court determined that no
genuine issue of material fact existed and that Grayboy was entitled to
judgment as a matter of law. For the following reasons, we affirm the
judgment of the trial court.
 This cause arose out of an accident which involved a motorcycle
driven by Cory L. Waldemar colliding with an automobile driven by Jana M.
Ridings. Plaintiff, Brandy A. Eyrich, was a passenger on Waldemar's
motorcycle. The allegations of the complaint are that Waldemar was
attempting to pass a row of vehicles when Ridings made a left turn into
Waldemar's path, causing Waldemar to collide with Ridings' vehicle.
Waldemar died as a result of injuries sustained in the accident, and Eyrich
sustained serious injuries.
 Eyrich filed a multi-count complaint. The count pertinent to
this appeal alleges that Grayboy, a retail seller of motorcycles, was
negligent in the sale and entrustment of the motorcycle to Waldemar some 10
days prior to the accident. Specifically, Eryich claimed that Grayboy knew
or should have known that Waldemar did not have a valid license to operate
a motorcycle at the time he purchased the motorcycle from Grayboy, and that
Waldemar, due to inadequate training, education and experience, was not
competent to safely operate a motorcycle on public highways. Eryich
further alleged that it was foreseeable on the part of Grayboy that the
sale of the motorcycle to Waldemar posed a risk of injury to others,
including Eryich.
 Grayboy moved for summary judgment, maintaining that no genuine
issue of material fact existed as to whether it knew or should have known
at the time it sold the motorcycle to Waldemar that he was not competent to
operate the motorcycle or that the sale posed a risk of injury to others.
Attached to the motion were several discovery deposition transcripts, which
established the following uncontested facts:(1) Waldemar was 20 years old
at the time he purchased the motorcycle from Grayboy; (2) Waldemar had a
valid Illinois driver's license, however he did not have a classification
(class M) to operate a motorcycle; (3) Waldemar owned an automobile, which
was insured through a policy issued to him by American Family Insurance;
(4) Waldemar was employed; (5) Walemar negotiated the purchase of the
motorcycle from Grayboy and obtained a loan for the funds necessary to make
the purchase; (6) Waldemar's mother accompanied him to pick up the
motorcycle from Grayboy and did not express concern about her son's
operation of the motorcycle; (7) Waldemar had prior experience operating
both motorcycles and automobiles; and (8) Waldemar had one prior ticket for
speeding and had never been involved in a vehicular accident.
 In addition to the above uncontested facts, Alfred A. Gray,
sales manager and co-owner of Grayboy, testified at deposition that the
state of Illinois does not require a person to have a license to operate a
motorcycle in order to purchase a motorcycle; nor does the State require
motorcycle dealers to verify that a purchaser is licensed to operate a
motorcycle.
 Eyrich maintained that Waldemar's age, driving record (1 ticket
for speeding), and lack of a class M driver's license were sufficient to
establish a genuine issue of material fact as to whether Grayboy knew or
should have known that Waldemar was not competent to safely operate a
motorcycle on public highways, and that the sale of the motorcycle to
Waldemar posed a risk of injury to others. The trial court granted summary
judgment to Grayboy. Eyrich appealed.
 Appeals from a trial court's grant of a motion for summary
judgment are reviewed de novo. In re Estate of Lind, 248 Ill. App. 3d 339
(2000). Summary judgment is appropriate where "the pleadings and
depositions on file, together with the affidavits, if any, demonstrate
there is no genuine issue as to any material fact and that the moving party
is entitled to judgment as a matter of law." Verkruysse v. Neese, 252 Ill.
App. 3d 831 (1993). For the purpose of summary judgment, "[a]n issue of
fact is not material, even if disputed, unless it has legal probative force
as to the controlling issue." First of America Banku, Rockford v. Netch,
166 Ill. 2d 165, 171 (1995).
 An action for negligent entrustment consists of "entrusting a
dangerous article to another whom the lender knows, or should know, is
likely to use it in a manner involving an unreasonable risk of harm to
others." Zedella v. Gibson, 165 Ill.2d 181 (1995). An automobile is not a
dangerous article per se but may become one if it is operated by a person
who is unskilled in its use. See Union Bank v. Kalkhurst, 265 Ill. App.
254, 259 (1932). Thus, a person may be liable for negligently entrusting
an automobile to one whom the person knows or should know is incompetent,
inexperienced, or reckless. See Kosrow v. Acker, 188 Ill. App. 3d 778, 783
(1989).
 Eyrich maintains that a genuine issue of material fact exists
as to whether Grayboy knew or should have known that Waldmar was
incompetent, inexperienced or reckless. Eyrich relies heavily upon Small
v. St. Francis Hospital, 220 Ill. App. 3d 537 (1991), where the court held
that an allegedly negligent sale of an automobile can sustain a cause of
action for negligent entrustment. In Small, the defendant car dealership
sold an automobile to an unlicensed 15-year-old minor. In holding that the
plaintiff could proceed with a negligent entrustment action against the
seller, the court in Small noted that:

"[w]e emphasize that our holding does not require that a seller of a car,
whether commercial or private, must ask for a driver's license or
investigate driving proficiency in every case; however, when a car seller
has reason to know that a prospective buyer is underage, unlicensed or
otherwise incompetent, a cause of action for negligent entrustment exists."
 Small, 220 Ill. App. 3d at 542.

 In Small, the fact that the person to whom the seller sold the car
was a minor without a driver's license was sufficient to state a cause of
action for negligent entrustment. In the instant matter, however,
Waldemar, at the time he purchased the motorcycle, was 20 years old (i.e.,
not a minor), held a valid driver's license, was gainfully employed, owned
an automobile which was properly insured, and had previously owned and
operated a motorcycle. The evidence indicated that Waldemar had one
speeding ticket and that Grayboy may have been aware of that fact. In sum,
Waldemar presented himself to Grayboy as a competent adult and a
responsible driver. The record is void of any fact which placed Grayboy on
notice that Waldemar was reckless, incompetent or inexperienced. We
reiterate the admonition in Small that a seller of a vehicle is under no
obligation to investigate the driving abilities of a customer.
 Eyrich argues that the fact that Waldemar did not have an M
classification on his driver's license should be sufficient to suggest that
Grayboy knew or should have known that Waldemar was incompetent,
inexperienced or reckless in the operation of a motorcycle. We disagree.
Failure of a motorcyclist to have a valid operator's license is not
evidence of negligence. French v. City of Springfield, 65 Ill. 3d 74, 80-
81 (1976) ("licensing statutes do not set forth specific standards of care
and the fact that a driver has not submitted to the State for testing of
his driving skills is not evidence that he was driving negligently when
involved in an accident"). If failure to have an M classification on his
driver's license could not stand as evidence of Waldemar's negligence, it
could not stand as evidence that Grayboy knew or should have known that he
would operate the motorcycle in a negligent manner.
 Eyrich also asserts that Waldemar had "a poor driving record"
which should have alerted Grayboy that he would operate the motorcycle in a
negligent manner. The record does not support that contention. The only
evidence in the record concerning Waldemar's prior driving record comes
from his mother who testified that her son had previously received one
speeding ticket and one ticket for having tinted windows. It cannot be
reasonably concluded that a 20-year-old adult, with one prior speeding
ticket, posed a risk of harm to others.
 Reviewing the record de novo, we find no evidence that would
create a genuine issue of material fact concerning whether Grayboy knew or
should have known that Waldemar would operate the motorcycle in a negligent
manner. Nothing in the record could support an inference that Grayboy was
on notice that Waldemar would operate the motorcycle in a dangerous manner.
 Therefore, we find that the trial court was correct in granting Grayboy's
motion for summary judgment.
 For the foregoing reasons, we affirm the judgment of the circuit
court of Tazewell County granting defendant's motion for summary judgment.

 Affirmed.
 SLATER, J., concurs.
 LYTTON, P.J., dissents.
 PRESIDING JUSTICE LYTTON dissenting:
_________________________________________________________________

 I respectfully dissent. The majority asserts that there are no
genuine issues of material fact. There are.
 The majority acknowledges that a cause of action for negligent
entrustment exists when the seller of a vehicle "has reason to know that a
prospective buyer is underage, unlicensed or otherwise incompetent."
(Emphasis added) Small, 220 Ill. App. 3d at 542. However, having
correctly stated the three possible bases for a negligent entrustment
claim, the majority speculates that one of them is not a factor after all,
and proceeds to excise it from the law. The majority permanently removes
entrustment of a vehicle to an unlicensed driver from those affected by
this cause of action.
 The majority holds that since a buyer's lack of a valid license is
not evidence of negligence in an accident, it can never be evidence of
negligent entrustment. We are dealing in apples and oranges here.
 The plaintiff must prove Waldemar's actual negligence in operating
the motorcycle. Once negligence is shown, however, the causal connection
between Grayboy's negligent entrustment and the plaintiff's injuries is
established. See Seward v. Griffin, 116 Ill. App. 3d 749, 755 (1983). A
mere showing that Waldemar was unlicensed does not make him negligent (See,
e.g., French v. City of Springfield, 65 Ill. 2d 74 (1976)), but a dealer's
independent negligence in entrusting the vehicle to a generally incompetent
driver is very different than the driver's negligence in any particular
accident. If the plaintiff can establish Waldemar's negligence through
other evidence, Grayboy's knowledge that Waldemar was unlicensed becomes
relevant to the question of Grayboy's negligence.
 In reaching the opposite conclusion, the majority overlooks this
court's holding in Seward, where we stated, "[E]ntrusting a car to an
unlicensed driver is tantamount to entrusting a car to an incompetent
driver ***." Seward, 116 Ill. App. 3d at 754. In Seward, a driver was
negligent in causing an accident. We held that a car dealer was
independently negligent in entrusting a vehicle to that driver when the
dealer had actual knowledge that the driver was unlicensed. Seward, 116
Ill. App. 3d at 755. There is no reason for this court to overrule Seward.
 The essential issues before the court on summary judgment were
whether Waldemar was unlicensed and inexperienced when he bought his
motorcycle, and, if so, did Grayboy have reason to know it?
 Conflicting facts presented at the motion for summary judgment show
the need for a trial. While Waldemar held a valid license to drive an
automobile, there was evidence that he did not hold a license to operate a
motorcycle. There was also evidence that Grayboy regularly inquired into
prospective buyers' licensing status and riding experience. Further, there
was deposition testimony that Waldemar had operated small, off-road
motorcycles before he purchased a street motorcycle from Grayboy, but that
he had never operated any motorcycles on the road. Finally, there was
evidence that the motorcycle purchased by Waldemar was an especially
powerful sports model capable of attaining a top speed of 160 to 180 miles
per hour within ten seconds of a standing start. A fact finder could
easily infer that Grayboy sold a powerful motorcycle to Waldemar knowing
that he was unlicensed, inexperienced and thus incompetent to operate such
a vehicle on the open road.
 Because the majority failed to apply the law stated in Seward to this
case, and because there was evidence that Grayboy knew that Waldemar was
incompetent to operate the motorcycle he purchased, genuine issues of
material fact exist. I would reverse and remand.