THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
STONNIE GREEN, Defendant-Appellant.

Third District   No. 77-66

Opinion filed November 7, 1977.

James I. Marcus and Lynn Sara Frackman, both of Chicago, for appellant.

Edward Petka, State's Attorney, of Joliet (Edward E. Ronkowski, Jr., Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

Defendant Stonnie Green was convicted of possession of less than 30 grams of a controlled substance (heroin) in violation of section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)) after a bench trial in the Circuit Court of Will County. He received a prison sentence of two to six years.

At his trial, agents of the Metropolitan Area Narcotics Squad (MANS) testified that they began a surveillance of defendant's Joliet apartment around 6 p.m. on Friday, March 5, 1976, after first securing a search warrant. The search warrant was based on an alleged sale of heroin by the defendant to an unidentified police informant some five days earlier, and no issue concerning it has been raised on appeal.

Defendant was seen entering the apartment building around 6:30 p.m. Approximately five hours later Deborah Barnett and Susan Battle left the building, but returned in 20 minutes with the defendant's automobile. When the two women entered the downstairs vestibule they were arrested by the police and accompanied upstairs to the defendant's apartment.

The police knocked on defendant's front door and announced their presence and purpose, but he did not immediately respond. The police became suspicious when they heard movement and the sounds of a toilet flushing and doors closing coming from inside the apartment, and after approximately 45 seconds, they forced the front door open. Inside they arrested the defendant, who was standing about midway between the front door and the washroom, and Susan Battle's husband, Paul, who was in the kitchen somewhat further away from the washroom.

The police collected a small quantity of a brown substance, later

identified as heroin, from the washroom, where it was scattered about the carpet, toilet bowl and heat register. The police seized various drug paraphernalia from an ice bucket in the living room, including one large and one small hypodermic syringe, a gram scale, some cut straws, several small spoons and a razor blade, as well as a bottle of methadone belonging to Paul Battle found in the refrigerator. The police also discovered men's and women's clothing hanging in the bedroom closets which belonged to the defendant and his girlfriend, Deborah Barnett, and some bills and items of mail addressed to the defendant.

The owner of the building testified that defendant had rented the apartment for five years, and although Barnett was living with him at the time of his arrest, defendant admitted that he was the only permanent resident in the apartment.

In her boyfriend's defense, Barnett admitted owning some of the drug paraphernalia discovered in in the ice bucket. She also testified that she knew Paul Battle used heroin and that she saw him enter the washroom . for five minutes at 11 p.m. However, Barnett did not notice Battle carry anything with him into the washroom at this time.

Defendant also testified that he knew Paul Battle used heroin and that Battle used the washroom a second time after the women left the apartment at 11:20 p.m. He stated that Battle remained in the washroom until the police arrived, at which point he ran past the defendant into the kitchen. Defendant could not recall at first whether he personally used the washroom that evening, although he later denied doing so.

On cross-examination defendant admitted that he was probably a heroin addict on the date of his arrest, but denied that he used heroin on March 5, 1976. In fact, he flatly denied being an addict at the time of his trial on November 16, 1976. Defendant also admitted owning the gram scale, but denied any knowledge concerning the other drug paraphernalia in the apartment.

■■ Defendant first contends that he was not proved guilty of unlawful possession of a controlled substance beyond a reasonable doubt. Under section 402(b) (Ill. Rev. Stat. 1975, ch. 56½, par. 1402(b)), the State had the burden of proving that he knowingly possessed less than 30 grams of a substance containing heroin. Whether the State succeeded in proving these elements, however, is essentially a question for the trier of fact, whose findings will not be disturbed on review unless the evidence is so contrary to the verdict as to create a reasonable doubt of guilt. *People v. Calhoun* (3d Dist. 1977), 46 Ill. App. 3d 691, 361 N.E.2d 55.

■■ Of course, a defendant's possession of narcotics may be either actual or constructive. (*People v. Kissinger* (3d Dist. 1975), 26 Ill. App. 3d 260, 325 N.E.2d 28.) Constructive possession depends on whether the defendant controlled the premises where the narcotics are found. (*People*

*v. Calhoun* (3d Dist. 1977), 46 Ill. App. 3d 691, 361 N.E.2d 55.) Thus, while a defendant's mere presence on the premises does not create an inference that he controlled the drugs (*People v. Mosley* (3d Dist. 1971), 131 Ill. App. 2d 722, 265 N.E.2d 889), both his knowledge and control over the narcotics may be inferred "where the narcotics are found on premises under defendant's control," and this is true regardless of whether others were also present at the time. *People v. Nettles* (1961), 23 Ill. 2d 306, 308, 178 N.E.2d 361.

■■ Applying this rule to the instant case it is evident that the State established defendant's knowledge and constructive possession of the heroin beyond a reasonable doubt. The evidence at trial disclosed that he had leased the apartment for a period of five years, and by his own admission he was its sole permanent resident. He also admitted owning the men's clothing discovered by police in a bedroom closet. These circumstances, among others, permitted the trial court to infer defendant's knowledge and possession of the heroin. And contrary to the defendant's position, this inference was not rebutted by the testimony implicating Paul Battle. The trial court was not required to, and obviously did not, believe this testimony. (*People v. Nettles* (1961), 23 Ill. 2d 306, 178 N.E.2d 361; see *People v. Horobecki* (1st Dist. 1977), 48 Ill. App. 3d 598, 363 N.E.2d 1.) In fact, once the State established the nature and amount of the substance scattered about defendant's washroom, the elements required for a conviction under section 402(b) were established beyond a reasonable doubt. Therefore, defendant's conviction for unlawful possession of heroin is affirmed.

In affirming defendant's conviction, we reject his argument that the trial court committed reversible error by refusing to allow into evidence certain records from the Omega Methadone Clinic which purportedly would have shown that Paul Battle was a heroin addict on the date of the offense. The record indicates that the trial court refused to allow these records to be introduced on the basis of relevancy and the best evidence rule.

■■ Our concern, however, is whether the judgment was correct, regardless of the reasons given. (*Keck v. Keck* (1974), 56 Ill. 2d 508, 309 N.E.2d 217.) Thus while we are doubtful of the court's reasons for its ruling, we believe the ruling itself was correct. It is a basic rule of evidence that before a party may introduce a document into evidence he "must lay foundations to circumvent hearsay, authentication, and best evidence preclusion rules." (*In re Estate of Fidler* (1st Dist. 1974), 23 Ill. App. 3d 1046, 1053, 319 N.E.2d 822, 828.) Because defendant's attorney never established Battle's unavailability as a witness in this case, the admission of the records would have violated the hearsay rule. Given the substantial risk that Battle's testimony would have contradicted

defendant or Barnett, it is easy to understand why defense counsel did not call him as a witness. The admission of Battle's records would have eliminated this risk while providing indirect support for his client's version of the incident.

■■ Lastly, defendant challenges his sentence on various grounds. He first contends that the two to six year prison term was not consonant with sound public policy because he strongly indicated a desire to become rehabilitated. While the record does contain defendant's statement of regret, it also discloses that he was convicted of the same offense by the same judge several months earlier, and had received probation. Our reading of the record indicates that the trial court considered defendant's rehabilitative possibilities, yet decided he could not impose a lesser sentence without deprecating the seriousness of defendant's offense. In light of defendant's previous conviction, we cannot say the court abused its discretion. Absent such abuse we must affirm the sentence. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■■ Defendant's final argument is that the court abused its discretion by not directing the Department of Mental Health to examine him for heroin addiction prior to sentencing. Under section 10 of the Dangerous Drug Abuse Act (Ill. Rev. Stat. 1975, ch. 91½, par. 120.10), the court must order this examination if it "has reason to believe that an individual convicted of a crime is an addict * * *." Our concern is whether the trial court abused its discretion in failing to have the defendant examined for heroin addiction. It is not the function of a reviewing court to substitute its judgment for that of the trial court in the absence of a finding of an abuse of discretion. *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168; *People v. Bradley* (1976), 43 Ill. App. 3d 463, 357 N.E.2d 696; *People v. Melson* (5th Dist. 1976), 36 Ill. App. 3d 71, 343 N.E.2d 258.

Here the record shows that the court had no reason to believe that defendant was an addict at the time he was sentenced. During defendant's testimony at trial, the following exchanges occurred:

"PROSECUTOR: Mr. Green, are you a heroin addict?
DEFENSE ATTY.: Objection, your Honor.
THE COURT: He may answer, objection overruled.
THE WITNESS: No.
PROSECUTOR: Have you ever taken drugs?
A.: Yes.
Q.: Have you taken heroin?
DEFENSE ATTY.: Objection.
THE COURT: He may ask, objection overruled.
THE WITNESS: Yes.
PROSECUTOR: You are not an addict?
A.: No."

In *People v. Morgan* (2d Dist. 1977), 50 Ill. App. 3d 962, 365 N.E.2d 1362, the court held that the trial judge did not have "reason to believe" defendant was a heroin addict where, despite evidence of past addiction to or regular use of heroin, the defendant did not call himself an addict. The present case, involving a defendant's repeated denial of being a heroin addict, is manifestly stronger.

It is obvious that the court considered this evidence submitted by defendant, exercised its discretion, and imposed sentence. We find no abuse of discretion.

The judgment of the Circuit Court of Will County is therefore affirmed.

Judgment affirmed.

ALLOY and BARRY, JJ., concur.