VERA GARDNER, as Ex'x of the Estate of Homer E. Gardner, Deceased, and for the Next of Kin of Homer E. Gardner, Deceased, Plaintiff-Appellant, v. NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION, Successor in Interest to International Harvester Company, Defendant-Appellee.

Fourth District No. 4—90—0686

Opinion filed May 2, 1991.

Cook, Shevlin, Keefe, Ysursa, Brauer & Bartholomew, Ltd., of Belleville (Bruce N. Cook and Harriet H. Hamilton, of counsel), for appellant.

A. James Shafter, of Kehart, Shafter, Hughes & Webber, of Decatur, and Michael S. Sundermeyer and Thomas M. Patton, both of Williams & Connolly, of Washington, D.C., for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

This case involves an appeal from the trial court's granting of summary judgment, necessitating that we reexamine the evidentiary foundations required before summary judgment is entered. As part of this reexamination, we will analyze Supreme Court Rule 191 (134 Ill. 2d R. 191), dealing with affidavits submitted in support of motions for summary judgment.

## I. BACKGROUND

In October 1980, Homer Gardner (Gardner) was operating his Oliver model 88 tractor to pick corn in his fields. An explosion occurred on the tractor, and Gardner was seriously burned. He died from his injuries eight days later.

In September 1982, plaintiff, Vera Gardner, brought an action against International Harvester Company (IH) and other defendants as executrix of Gardner's estate and for the next of kin. Navistar, the successor corporation to IH, was substituted as the proper named defendant in April 1989.

In her complaint, plaintiff alleged six counts against defendant. Counts I through III were on behalf of Gardner for his personal injuries and subsequent death. (See Ill. Rev. Stat. 1989, ch. 110, par. 2—1008(e).) These three counts sought compensatory damages due to defendant's negligence (count I), strict liability (count II), and for punitive damages due to defendant's wilful and wanton misconduct (count III). Counts IV through VI sought recovery for wrongful death (see Ill. Rev. Stat. 1989, ch. 70, pars. 1 through 2.2) and similarly alleged negligence (count IV), strict liability (count V), and wilful and wanton misconduct (count VI).

In April 1983, William Niendick, who worked as a farmhand on the Gardner farm, testified at a deposition that he began working for Gardner in 1970. Niendick testified that the original gas cap on the Oliver tractor broke around 1977 or 1978, and that a tin can was placed over the broken gas cap to keep rain water out of the gas tank. Gardner continued to use the broken gas cap and can before he replaced it with an IH gas cap he found in a cake pan that sat on a workbench in his machine shed. Niendick testified that this IH gas cap had been in the machine shed for at least seven or eight years

before it was used on the Oliver tractor. The IH gas cap was used for approximately two years prior to the accident.

(This case was "delayed" from consideration on its merits by contested issues of venue. See *Gardner v. International Harvester Co.* (1985), 133 Ill. App. 3d 665, 479 N.E.2d 357, *rev'd* (1986), 113 Ill. 2d 535, 499 N.E.2d 430.)

In September 1988, defendant filed a motion for involuntary dismissal or summary judgment, alleging that (1) the negligence counts should be dismissed because the "defendant owed no duty regarding the performance of the Oliver tractor," (2) counts II and V were barred by the statute of repose (Ill. Rev. Stat. 1989, ch. 110, par. 13—213(b)), and (3) counts III and VI should be dismissed due to the absence of a showing of duty and proximate cause. After a hearing, the trial court granted defendant's motion, and held, as a matter of law, that (1) defendant owed no duty to Gardner, and (2) the statute of repose barred plaintiff's strict liability claims.

In June 1990, plaintiff filed a motion for reconsideration under section 2—1203 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—1203) to which she attached an affidavit from her attorney, Bruce N. Cook. Four photocopied exhibits were attached to the affidavit: (1) testimony given by William E. Trump in a similar case (see *Stambaugh v. International Harvester Co.* (1982), 106 Ill. App. 3d 1, 13, 435 N.E.2d 729, 739 (discussing the testimony of Trump, "a retired John Deere Company engineer")); (2) a safety warning issued by IH in August 1980 concerning its triple-baffled gas cap; (3) an internal IH memo to regional managers concerning the "serious hazard of fuel-related fires," dated August 14, 1980; and (4) trial testimony given by Donald Creighton, an engineering professor at the University of Missouri, given in another trial against defendant alleging a similar cause of action.

The trial court held that because Cook's affidavit did not conform to Supreme Court Rule 191 (see 134 Ill. 2d R. 191), it would not be considered. The court then denied the petition to reconsider its order granting summary judgment in favor of defendant. In the alternative, the court ruled that even if the affidavit were to be considered, summary judgment was still proper as a matter of law on all counts.

## II. ANALYSIS

■ Summary judgment is properly granted when the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Hagy v. McHenry*

*County Conservation District* (1989), 190 Ill. App. 3d 833, 842, 546 N.E.2d 77, 83.) In reviewing an order for summary judgment, this court must consider all of the facts revealed in the record and all of the grounds alleged by the parties in order to determine whether a genuine issue of material fact exists. (*Seefeldt v. Millikin National Bank* (1987), 154 Ill. App. 3d 715, 718, 506 N.E.2d 1052, 1055.) Therefore, in order to determine what facts were (or should have been) before the trial court when it decided the motion for summary judgment, we must first determine whether the trial court erred in not considering the information contained in plaintiff's affidavit supporting her motion to reconsider.

### A. *Application of Supreme Court Rule 191*

On appeal, plaintiff first argues that the affidavit and attachments submitted with the motion for reconsideration presented facts sufficient to preclude enforcement of defendant's motion for summary judgment and asks this court to consider these materials in her subsequent arguments. Supreme Court Rule 191(a) provides, in part, the following:

> "Affidavits *** in opposition to a motion for summary judgment *** shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim *** is based; shall have attached thereto sworn or certified copies of all papers upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence; and shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." 134 Ill. 2d R. 191(a).

See also *Dietz v. Spalla* (1989), 186 Ill. App. 3d 742, 746, 542 N.E.2d 855, 858.

Leaving aside the tardiness of the filing of Cook's affidavit and whatever problems may be present by reference in that affidavit to testimony from other cases, the inclusion in Cook's affidavit of the photocopies of IH documents allegedly sent to owners of IH tractors or to IH regional managers presents serious problems. In determining the genuineness of a fact for summary judgment, a court should consider only facts admissible in evidence. (*Seefeldt*, 154 Ill. App. 3d at 718, 506 N.E.2d at 1055.) Basic rules of evidence require that a party must lay the foundations for the introduction of a document into evidence. (*Seward v. Griffin* (1983), 116 Ill. App. 3d 749, 763, 452 N.E.2d 558, 569; *People v. Green* (1977), 54 Ill. App. 3d 252, 255, 369 N.E.2d 589, 592; *In re Estate of Fidler* (1974), 23 Ill. App. 3d 1046, 1053, 319 N.E.2d 822, 828.) To authenticate a document, evidence

must be presented to demonstrate that the document is what its proponent claims. (*People v. Munoz* (1979), 70 Ill. App. 3d 76, 85, 388 N.E.2d 133; *Ross v. Pfeifer* (1976), 39 Ill. App. 3d 789, 795, 350 N.E.2d 797, 803.) A document the authenticity of which is not established is not admissible evidence.

The Illinois Supreme Court has provided a pretrial procedure for clearing this evidentiary hurdle. Rule 216(b) states that "[a] party may serve on any other party a written request for admission of the genuineness of any relevant documents described in the request." (134 Ill. 2d R. 216(b).) However, no request to admit the genuineness of the IH documents attached to Cook's affidavit was ever made before that affidavit was filed.

■ Cook's affidavit did not establish that the source and content of these materials were within his personal knowledge and that "the affiant [Cook], if sworn as a witness, can testify competently [to the facts alleged therein]" (134 Ill. 2d R. 191(a)). If Cook were called to testify about the matters in his affidavit, he would be unable to provide *admissible* testimony as to the *substantive content* of the exhibits he attached to his affidavit. See *Tipsord v. Unarco Industries, Inc.* (1989), 188 Ill. App. 3d 895, 899, 544 N.E.2d 1198, 1201.

■ ■ As previously noted, Cook's affidavit was attached to plaintiff's petition for reconsideration of the trial court's order granting defendant's motion for summary judgment. The intended purpose of a petition to reconsider is to bring to the court's attention (1) newly discovered evidence which was not available at the time of the first hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law. (*Kaiser v. MEPC American Properties, Inc.* (1987), 164 Ill. App. 3d 978, 987, 518 N.E.2d 424, 429-30.) Even if Cook's affidavit were sufficient under Supreme Court Rule 191, the trial court would have been justified in disregarding the contents of that affidavit solely because all of that material had been available prior to the hearing on the motion for summary judgment (see *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 232, 450 N.E.2d 756, 759), and plaintiff did not provide *any* explanation (much less a reasonable one) as to why this material was not offered in response to the motion for summary judgment before the hearing was held (see *Delgatto v. Brandon Associates, Ltd.* (1989), 131 Ill. 2d 183, 195, 545 N.E.2d 689, 695). Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and effi-

ciency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be.

### B. *Summary Judgment on Negligence Counts*

The next issue is whether the trial court's determination that defendant owed no duty to Gardner, thereby requiring a motion for summary judgment, was correct. Plaintiff's original complaint in this action argued that defendant was negligent in its design and manufacture of the gas cap because the one-sixteenth-inch vent hole was inadequate to vent foreseeable fuel tank pressure and that it could be dislodged when pressure accumulated in a fuel tank. Defendant's motion for involuntary dismissal or summary judgment argued that it "owed no duty regarding the performance of the Oliver tractor" and that there was no proximate cause between "a fire on an Oliver tractor not designed or manufactured by defendant and *** the design and manufacture by defendant of an International Harvester gasoline tank cap." (These arguments were made with regard to the four negligence counts and we do not consider their applicability, if any, to the strict liability claims.) Along with its motion, defendant filed a memorandum in support. Thus, the only materials before the court for its consideration of summary judgment were plaintiff's complaint, defendant's motion and memorandum, and Niendick's deposition.

The written order prepared by defendant and signed by the trial court does not provide a basis for its ruling other than that plaintiff failed "to introduce a genuine issue of material fact precluding entry of summary judgment in this cause." Based on the trial court's comments at the hearing on the motion to reconsider, the trial court apparently granted summary judgment because it found no duty of defendant toward Gardner. At that hearing, the trial court made the following remarks:

"THE COURT: This Court ruled that as a matter of law it construed the duty—there was no duty toward your client. Foreseeability is part of it. I guess anything is foreseeable, but we get to a point where the duty stops even though I think we all agree that somebody might take a cap off of one tractor and put it on another. That is not the entire question.

The question is how far does the duty go to avoid negligent design or to warn people. So I don't think we have a real dispute on the facts, do we? It comes down to a matter of law."

■ Again, in reviewing an order granting summary judgment, this court must determine whether the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Seefeldt*, 154 Ill. App. 3d at 718, 506 N.E.2d at 1055.) The party moving for summary judgment must show, as a matter of law, that it is entitled to judgment. (*Carruthers v. B.C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459.) Conversely, while a plaintiff responding to a motion for summary judgment is not required to prove her case at the summary judgment stage, she must, nevertheless, present some evidentiary facts to support the elements of her claim. (*Phillips v. United States Waco Corp.* (1987), 163 Ill. App. 3d 410, 416, 516 N.E.2d 670, 674.) We address plaintiff's burden first.

■ To state an adequate cause of action for negligence, a plaintiff must set out facts that establish (1) the existence of a duty owed by the defendant to the plaintiff, (2) defendant breached that duty, (3) that breach was the proximate cause of an injury. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226; *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525, 513 N.E.2d 387, 395-96.) Duty is a question of law for the court to be determined by asking whether plaintiff and defendant stood in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for plaintiff's benefit. (*Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226; *Kirk*, 117 Ill. 2d at 525, 513 N.E.2d at 396.) Duty is determined, in part, by the reasonable foreseeability of injury. (*Ward*, 136 Ill. 2d at 140, 554 N.E.2d at 226.) "Other considerations include the likelihood of injury, the magnitude of the burden of guarding against it[,] and the consequences of placing that burden upon the defendant." *Ward*, 136 Ill. 2d at 140-41, 554 N.E.2d at 226-27.

Paragraph 7 of plaintiff's complaint alleges that Gardner was using a triple-baffled fuel cap manufactured by defendant. In its answer, defendant denied this paragraph because it had insufficient knowledge or information to respond to this allegation. In moving for involuntary dismissal or summary judgment, defendant argued that it "owed no duty regarding the performance of the Oliver tractor, which was not designed or manufactured by defendant," and that there was no proximate causation between the fire and "the design and manufacture by defendant of an International Harvestor gasoline tank cap."

There are two problems with granting defendant's motion in this case. First and foremost, defendant offered no evidence that it could not foresee the use of one of its gas caps on another tractor. In its appellate brief, defendant makes the following assertions:

"Navistar designed, manufactured, and extensively tested IH parts for use on IH tractors. The company had no reason to think that it should also design and manufacture its parts to work safely on other companies' machines. Navistar is not unlike the manufacturer of the tin can that Mr. Gardner and Mr. Niendick used to cover the gasoline filler hole before the [gas cap in the] cake pan beckoned. If the tin can did not work and gasoline caught fire, no one would contend that the can manufacturer was responsible. This use of its product was not foreseeable. Similarly, IH did not reasonably expect that its discarded parts would be Gerry-rigged for use on other manufacturers' machines for which the IH product was never designed, tested, marketed, advertised, or sold."

█▌ █ This passage illustrates the error of the trial court's decision. First, defendant offered no evidence to back up these claims which, in essence, provided the support for the trial court's decision. A motion for summary judgment requires the trial court to assess the evidentiary facts presented in support of, or in opposition to, the motion. (See *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 176-77, 483 N.E.2d 210, 215.) Defendant provided no evidence that it designed, manufactured, and extensively tested its parts for use *only* on IH tractors. Nor did defendant show that the gas cap was gerry-rigged in any way; apparently, it fit right onto the gas intake pipe of the Oliver tractor. Defendant provided no evidence that its products were never designed, tested, marketed, advertised, sold, or otherwise intended for general use or for the specific use employed by Gardner in the present case.

Second, unlike the tin can, defendant's product was a gas cap, used as a gas cap, to cap the end of a gas tank. This was a foreseeable use of its product that does not constitute gerry-rigging of a component part. The evidentiary material that defendant *did* offer also tends to show that Gardner *was* within the foreseeable class of persons to whom defendant owed a duty. Niendick's deposition reveals that Gardner had owned an IH 706 tractor prior to the accident, and also owned an IH M tractor at the time of the accident. As an owner of an IH product, Gardner should be a foreseeable party to whom IH owes a duty.

Third, defendant's statements request that the court make some assumptions or inferences in its favor. For example, defendant asks the court to assume that its gas caps were designed for and worked only on IH tractors. Defendant also asks the court to infer that because defendant designed, manufactured, and tested IH parts for use

on IH tractors, it had no reason to think IH parts might be used on other tractors. However, if any facts exist which allow for more than one conclusion or inference, including one unfavorable to movant, the motion for summary judgment must be denied, and the resolution of those facts and inferences must be left for determination at trial. (*Hagy*, 190 Ill. App. 3d at 842, 546 N.E.2d at 84.) Niendick's testimony introduces a genuine issue of material fact; he could not answer whether the gas cap came off another tractor or if it was purchased at one time as a replacement part. If defendant had introduced evidence that its gas caps were never marketed or sold as a "one size fits all" replacement part, then this factual issue would have been answered. This information must be easily available to defendant, and requiring defendant to provide evidence thereof to support its motion for summary judgment cannot be viewed as burdensome.

The final problem with granting defendant's motion in this case is that the trial court, prompted by defendant's motion and memorandum, misconstrued the basis of plaintiff's complaint. Defendant argues that it should not be held liable for Gardner's invention of a "hybrid machine." However, plaintiff did not make such an allegation; rather, plaintiff focused her claim on the negligent design or manufacture of the IH gas cap. Plaintiff has alleged that the cap, and the cap alone, was the cause of the accident. At oral argument, defendant's attorney argued that the gas cap was a component part of the fuel system. Again, absent evidence in the record provided by movant on this contention, summary judgment is improper.

On these grounds, we hold that granting summary judgment was error in this case. Accordingly, we reverse and remand on counts I, III, IV, and VI.

Reaching this decision was made more burdensome than necessary because defendants filed a "hybrid motion" (*Dunn v. Baltimore & Ohio R.R. Co.* (1989), 127 Ill. 2d 350, 372, 537 N.E.2d 738, 748), a practice that has been strongly discouraged in this State. In *Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 312 N.E.2d 605, the Illinois Supreme Court distinguished between motions to dismiss and motions for summary judgment, as follows:

> "The Civil Practice Act, however, establishes two distinct procedures. \*\*\* To combine an inquiry into whether a pleading is sufficient to state a cause of action with an examination which almost necessarily assumes that a cause of action has been stated and proceeds to determine whether there are any material issues of fact to be tried is likely to confuse both the parties and the court. \*\*\* The defendants in this case should have

first challenged the legal sufficiency of the complaint. When, and only when, a legally sufficient cause of action had been stated should the court have entertained the motions for summary judgment and considered the affidavits filed in support thereof." *Janes*, 57 Ill. 2d at 406, 312 N.E.2d at 609.
See also *Dunn*, 127 Ill. 2d at 372, 537 N.E.2d at 748.

■■ We extend that concern to a hybrid motion, such as in the present case, for involuntary dismissal under section 2—619 of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) or summary judgment. By filing a hybrid motion, defendant created confusion that first manifested itself at the trial court and has continued to do so during proceedings of this court. The better practice would be to file separate motions.

## C. *Statute of Repose*

The legislature has determined that an action asserting strict products liability must be brought within 10 years of acquiring the product or the cause of action will be barred. The statute of repose in Illinois states, in pertinent part, as follows:

"(b) Subject to the provisions of subsections (c) and (d) no product liability action based on the doctrine of strict liability in tort shall be commenced except within the applicable limitations period and, in any event, within 12 years from the date of first sale, lease or delivery of possession by a seller or 10 years from the date of first sale, lease or delivery of possession to its initial user, consumer, or other non-seller, whichever period expires earlier, of any product unit that is claimed to have injured or damaged the plaintiff, unless the defendant expressly has warranted or promised the product for a longer period and the action is brought within that period." Ill. Rev. Stat. 1989, ch. 110, par. 13—213(b).

■■ Niendick testified that he started working for Gardner in 1970 and that the gas cap had been in the machine shed since that time. Plaintiff's action was filed on September 15, 1982. Accordingly, the trial court properly dismissed plaintiff's counts alleging strict products liability.

Defendant asserts that the testimony of Niendick that the IH gas cap had been in Gardner's machine shed for at least 10 years prior to the accident, being uncontradicted by plaintiff, must therefore be taken as true. (See *Carruthers*, 57 Ill. 2d at 380, 313 N.E.2d at 459; *Loos v. American Energy Savers, Inc.* (1988), 168 Ill. App. 3d 558, 562, 522 N.E.2d 841, 844.) Operating under the summary judgment

standards cited above, we agree with the trial court's application of the statute of repose, given that plaintiff has not provided any evidentiary facts to contest its application. Therefore, the trial court's decision with regard to counts II and V is affirmed.

For the reasons stated, the decision of the trial court is affirmed in part, and reversed and remanded in part.

Affirmed in part; reversed and remanded in part.

LUND, P.J., and GREEN, J., concur.