(No. 97375.—

ANDREA COLLINS, Indiv. and as Special Adm'r of the Estate of Joseph J. Collins, Jr., Deceased, *et al.,* Appellees, v. LAKE FOREST HOSPITAL *et al.* (Lake Forest Hospital, Appellant).

*Opinion filed December 2, 2004.*

Cassiday, Schade & Gloor, L.L.P., of Chicago (Marc F. Benjoya, John J. Reid, Donald F. Ivansek and Brian Albert Schroeder, of counsel), for appellant.

Lawrence J. Griffin, of Eugene L. Griffin & Associates, Ltd., of Chicago, for appellees.

JUSTICE KILBRIDE delivered the opinion of the court:

The limited issue on appeal before this court is whether the defendant Lake Forest Hospital (hospital) had a duty to inquire into the availability of a surrogate

decisionmaker and implement the surrogate's treatment decisions under the Health Care Surrogate Act (Act) (755 ILCS 40/1 *et seq.* (West 2000)). The circuit court of Lake County dismissed the amended complaint against the hospital filed by the decedent's estate as well as by individual members of his family, and the appellate court reversed. We, in turn, reverse the appellate court judgment and reinstate the trial court's order dismissing the plaintiff's amended complaint against the hospital.

## BACKGROUND

The decedent, Joseph J. Collins, Jr., suffered a traumatic head injury after falling at home and underwent emergency brain surgery at the hospital on April 20, 1999. When Joseph's initial attending physician, Dr. Gary Schaffel, examined him, Joseph had little neurological function and was unconscious and breathing with a ventilator. Dr. Schaffel expressed no opinion on whether the patient had the ability to consent to medical treatment and did not make any entry in the patient's medical chart concerning his decisionmaking ability. The next day, Dr. Gerald Osher replaced Dr. Schaffel as Joseph's attending physician. Dr. Osher wrote in Joseph's chart that he had discussed the case with the surgeon and decided to remove the patient from the ventilator. He also noted an entry in the chart dated April 23 stating there had been "lengthy discussion with family (30 minutes) in which [he] explained the grim prognosis. They are in agreement with the care plans." He could not recall the family members who had been involved in that discussion. In addition, Dr. Osher expressed no opinion on whether the patient had the ability to consent to treatment.

Joseph's wife called the hospital at approximately 8:35 a.m. on April 23, 1999, and requested that her husband not be removed from the ventilator until she and their children, who had recently arrived from out of

town, could get to the hospital that morning. What actually transpired was that an extubation order was entered at 10:55 a.m., the patient was extubated at 11 a.m., and he died at 11:03 a.m. Joseph's wife and children did not arrive at the hospital until 11:10 a.m.

The decedent's wife, children, and estate filed a complaint against Lake Forest Hospital, naming Dr. Osher as one of the respondents-in-discovery. See 735 ILCS 5/2—402 (West 2000). The hospital filed motions to dismiss pursuant to sections 2—615, 2—619, and 2—622 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615, 2—619, 2—622 (West 2000)). The trial court denied the motions as to count I of the complaint, alleging medical battery, and counts III and VI, alleging violations of the Act (755 ILCS 40/1 *et seq.* (West 2000)). The court later allowed the plaintiffs to file an amended complaint and to convert Dr. Osher to a defendant.

Counts I through III of the amended complaint were brought by the estate against the hospital. Counts IV through VI were brought by the estate against Dr. Osher and mirrored counts I through III. The surviving plaintiffs brought parallel counts VII and IX against the hospital and counts VIII and X against Dr. Osher. Dr. Osher filed a motion to dismiss counts V and VI, alleging negligence and violations of the Act. The hospital followed with a similar motion, but it did not seek to dismiss count III, alleging that the hospital had violated the Act, because that count had been upheld in the original complaint.

The trial court granted both defendants' motions to dismiss with prejudice, and the hospital then filed a motion to dismiss count III of the amended complaint with prejudice. That motion was subsequently granted, leaving only counts I and IV, alleging medical battery against the hospital and Dr. Osher respectively, still pending in the trial court. The plaintiffs' motion to reconsider was

denied, and they appealed. The appellate court reversed. 343 Ill. App. 3d 353. Dr. Osher did not seek to appeal the appellate court's judgment. Accordingly, count VI of the amended complaint, alleging that Dr. Osher had violated the Act, was remanded to the trial court for further proceedings.

The hospital filed a petition for leave to appeal, and this court allowed its petition. See 177 Ill. 2d R. 315(a). The only issue before this court is the dismissal of count III. That count alleges that the hospital failed to fulfill its duties under the Act.

## ANALYSIS

The hospital first argues that it had no duties under the Act in this case. It maintains that the attending physician has the primary role under the Act and is required to determine whether, to a reasonable degree of medical certainty, the patient has decisional capacity, as well as to confer with the surrogate decisionmaker on treatment matters and to implement any decision by the surrogate to forgo life-sustaining treatment. 755 ILCS 40/20(c), (d), (f) (West 2000). The only duty the Act imposes on a "health care provider" such as the hospital is to "make a reasonable inquiry as to the availability of possible surrogates." 755 ILCS 40/25(a) (West 2000). The hospital contends that even this limited duty did not arise here because the duty exists *only after* the attending physician has made the determination that the patient lacks decisional capacity. Since neither attending physician in this case ever made that determination, the hospital maintains it bore no duty under the Act.

As the appellate court noted, the hospital raised this issue for the first time on appeal, and the court resolved the matter because it was likely to arise on remand. 343 Ill. App. 3d at 360. Before this court, the plaintiffs argue that the hospital has again changed the issue from the one presented in its petition for leave to appeal, alleging

a direct conflict between the appellate decision and the requirement of a written finding in *Ficke v. Evangelical Health Systems*, 285 Ill. App. 3d 886 (1996), to whether the hospital owed any duty under the Act because the attending physician never determined the patient lacked decisional capacity. We interpret the plaintiffs' argument to be one of waiver. This court has long held that waiver is a limitation on the parties, not on this court. *Hux v. Raben*, 38 Ill. 2d 223, 224 (1967). At this time we choose to address the issue of a health care provider's duty under the Act because it is critical to the development of a sound body of precedent concerning the proper interpretation, and thus implementation, of legislation concerning vital care and treatment decisions for patients lacking decisional capacity, including the termination of life-sustaining procedures. See *Golden Rule Insurance Co. v. Schwartz*, 203 Ill. 2d 456, 463 (2003). Because this appeal involves the grant of a motion to dismiss, we review it *de novo*. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 266 (2003).

The plaintiffs contend that the hospital has skirted "the true factual basis" of this appeal, that is, whether the attending physicians knew Joseph lacked decisional capacity. Under the Act, "decisional capacity" is "the ability to understand and appreciate the nature and consequences of a decision regarding medical treatment or forgoing life-sustaining treatment and the ability to reach and communicate an informed decision in the matter as determined by the attending physician." 755 ILCS 40/10 (West 2000). A patient "is presumed to have decisional capacity in the absence of actual notice to the contrary without regard to advanced age." 755 ILCS 40/20(c) (West 2000). The plaintiffs assert that the evidence shows the attending physicians "were aware" Joseph lacked decisional capacity because he had no chance of recovery and no neurological function after his admission

to the hospital. The plaintiffs contend that this "aware-ness" by the attending physicians was sufficient to trigger the hospital's duty to inquire into "the availability of possible surrogates." 755 ILCS 40/25(a) (West 2000). That is an incorrect interpretation of the applicable provisions of the Act. While the patient in this case may have lacked decisional capacity, that is not the key to triggering the hospital's statutory duty.

Under the Act,

> "A determination that an adult patient lacks decisional capacity *shall be made by the attending physician* to a reasonable degree of medical certainty. The determination *shall be in writing* in the patient's medical record and shall set forth the attending physician's opinion regarding the cause, nature, and duration of the patient's lack of decisional capacity." (Emphases added.) 755 ILCS 40/20(c) (West 2000).

When a patient lacks decisional capacity, the hospital must first inquire into "the availability and authority of a health care agent under the Powers of Attorney for Health Care Law." 755 ILCS 40/25(a) (West 2000). In this case, a health care agent had not been authorized. Consequently, the next sentence of the statute must be considered. According to that sentence, *if the patient lacked decisional capacity as determined under the Health Care Surrogate Act at issue in this case*, the hospital would be required to "make a reasonable inquiry as to the availability of possible surrogates listed." 755 ILCS 40/25(a) (West 2000). The proper interpretation of that sentence lies at the heart of this controversy.

The error in the plaintiffs' interpretation is that they focus on the hospital's alleged notice of the *patient's actual condition* rather than on the existence of *a written determination by the attending physician that the patient lacked decisional capacity*. See 755 ILCS 40/20(c) (West 2000). Section 20(c) of the Act specifically requires the attending physician's determination to be made in writ-

ing. 755 ILCS 40/20(c) (West 2000). This writing require-
ment promotes the legislature's stated intent in enacting
this statute. The Act is intended, in relevant part, to
provide a process for making private medical and life-
sustaining treatment decisions "without judicial involve-
ment of any kind." 755 ILCS 40/5(b) (West 2000). To ef-
fectuate this goal, the legislature has chosen to mandate
that a single individual, namely, the patient's attending
physician, determine *in writing* whether the patient lacks
decisional capacity. 755 ILCS 40/20(c) (West 2000). This
mandate averts the potential dilemma of multiple deci-
sionmakers coming to varying conclusions regarding a
patient's decisional capacity. If the Act permitted multiple
decisionmakers, the attending physician and various
members of the hospital staff involved in the patient's
care could arrive at very different conclusions, likely
necessitating judicial intervention in direct contradiction
to the Act's goal of avoiding "judicial involvement of any
kind" (755 ILCS 40/5(b) (West 2000)). In anticipation of
this problem, the legislature has placed the responsibility
for determining when a patient lacks decisional capacity
solely on the patient's attending physician.

Thus, the relevant issue in this case is whether the
hospital had notice that Joseph's attending physician
made a written determination that Joseph lacked the
capacity to make his own health care and treatment deci-
sions. See 755 ILCS 40/20(c) (West 2000). The record
indicates that neither attending physician involved in
this case ever made that written determination. The
propriety of their failure to make that determination has
no bearing on the only question before us in this case,
namely, the hospital's duty under the Act. The hospital's
duty to inquire into the availability of the appropriate
surrogate decisionmaker was not triggered here because
the attending physician did not make a written determi-
nation that the patient lacked decisional capacity, as

explicitly required by the Act. See 755 ILCS 40/20(c) (West 2000).

Moreover, even if the hospital's duty to inquire had been triggered, it appears that the duty was fulfilled. The statute requires the health care provider, in this case the hospital, to "make a reasonable inquiry as to the availability of possible surrogates listed" in the remainder of the section. 755 ILCS 40/25(a) (West 2000). When the appropriate surrogate has been identified, the hospital must record "the name, address, telephone number, and relationship of that person to the patient *** in the patient's medical record." 755 ILCS 40/25(b) (West 2000). It appears that the hospital did, in fact, record the relevant information concerning Andrea Collins, the proper surrogate decisionmaker under the statute. The Act also required the hospital to try to contact that surrogate by telephone within 24 hours after the patient was determined to lack decisional capacity. 755 ILCS 40/25(a) (West 2000). Since no such determination was ever made by the attending physician, however, that duty was never triggered.

As for the plaintiffs' claim that the hospital violated its duty to follow the surrogate's instructions, while the statute mandates that the attending physician "promptly implement [a surrogate's] decision to forgo life-sustaining treatment on behalf of the patient" under certain specified conditions, there is no analogous provision for health care providers such as the hospital. See 755 ILCS 40/20(f) (West 2000) (stating that "[o]nce the provisions of this Act are complied with, the attending physician shall thereafter promptly implement the decision to forgo life-sustaining treatment on behalf of the patient unless he or she believes that the surrogate decision maker is not acting in accordance with his or her responsibilities under this Act, or is unable to do so for reasons of conscience or other personal views or beliefs"). Since the

hospital bore no duties under the Act in the absence of a written determination by the attending physician that the patient lacked decisional capacity, the trial court properly dismissed count III, alleging statutory violations by the hospital.

Finally, the parties address the applicability of the appellate court decision in *Ficke v. Evangelical Health Systems*, 285 Ill. App. 3d 886 (1996), to the issue of the hospital's statutory duty. In *Ficke*, the decedent's estate and surviving adult children filed a complaint against both the hospital and the attending physician, claiming, in relevant part, various violations of the Act when the patient was given life-sustaining treatment contrary to her wishes and the wishes of her children. There, as here, the attending physician did not make a determination that the patient lacked decisional capacity. The appellate court affirmed the trial court's dismissal of the cause of action against the hospital, finding that "the attending physician, not the hospital or its staff" had the duty to determine that the patient lacked decisional capacity and suffered from one of three qualifying conditions that would have permitted a surrogate decisionmaker to refuse life-sustaining interventions. *Ficke*, 285 Ill. App. 3d at 893-94. This portion of the opinion coincides with our analysis in this case.

## CONCLUSION

We hold that the Act does not impose a duty on a health care provider, such as the hospital in this case, to inquire into the availability of a surrogate decisionmaker until after the attending physician has made a written determination under the Act that the patient lacks decisional capacity. Since no such determination was made in this case, the hospital owed no duty to inquire, and the trial court properly dismissed count III of the plaintiffs' amended complaint. Therefore, the portion of the appellate court judgment reinstating count III of the

plaintiffs' amended complaint is reversed, and the cause is remanded to the circuit court for further proceedings on the counts that remain pending.

*Appellate court judgment affirmed in part and reversed in part; circuit court judgment affirmed in part and reversed in part; cause remanded.*