2020 IL App (1st) 182430-U

FIFTH DIVISION
March 31, 2020

No. 1-18-2430

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., | ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| WILLIAM C. KEY; STANDARD BANK AND TRUST COMPANY as Trustee under trust dated June 20, 1990 and known as Trust No. 8-8989; CITIZENS FINANCIAL BANK; CITY OF COUNTRY CLUB HILLS; UNKNOWN BENEFICIARIES OF STANDARD BANK AND TRUST COMPANY as Trustee under trust dated June 20, 1990 and known as Trust No. 8-8989; UNKNOWN OWNERS; and NON-RECORD CLAIMANTS, | ) ) ) ) ) ) ) ) ) ) ) ) | No. 12 CH 30995 |
| Defendants | ) ) | Honorable Gerald V. Cleary, Jr., |
| (William C. Key, Defendant-Appellant). | ) | Judge, presiding. |

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held:* We affirm the circuit court's judgment in favor of the plaintiff in this mortgage foreclosure case. The defendant failed to raise a genuine issue of material fact in opposition to summary judgment because his argument relied on documents that were not properly authenticated. The circuit court did not err in confirming the judicial sale of the property.

¶ 2    In 2001, defendant William C. Key executed a mortgage and note on property located in Country Club Hills, Illinois with America's Wholesale Lender. On August 14, 2012, after Key failed to make timely payments, America's Wholesale Lender's successor, Bank of America, N. A. (the Bank)[1], sued Key and others to foreclose on the mortgage.

¶ 3    Key filed an answer to the amended complaint which included two affirmative defenses. The first affirmative defense stated that: (1) Key had signed a second modification of the note and mortgage; (2) he had complied with the modification's requirements; (3) he tried to make payments pursuant to the modification which the Bank refused to accept; and (4) the Bank failed to return an executed copy of the modification to him. The first affirmative defense concluded that the doctrine of unclean hands precluded the Bank from obtaining relief. The second affirmative defense was virtually identical to the first, except that it asserted that the bank was equitably estopped from obtaining relief. No copy of any modification agreement was attached to either of the two affirmative defenses.

¶ 4    The Bank moved to strike both affirmative defenses pursuant to section 2-615 of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2014)). The Bank argued that the affirmative defenses were flawed because Key failed to include a copy of the alleged modification as required by section 2-606 of the Code, which provides that "if a claim or defense is founded upon a written instrument, a copy thereof *** must be attached to the pleading ***". The circuit court granted the section 2-615 motion and struck the affirmative defenses without prejudice to repleading them by a certain date. Key never repleaded the affirmative defenses.

---

[1] The loan changed hands several times during the case's lifespan and various entities were substituted as plaintiff. For simplicity, we will use the term "the Bank" regardless of whether we are referring to Bank of America, N. A. or any of its predecessors.

¶ 5    On October 8, 2015, the Bank moved for summary judgment pursuant to section 2-1005 of the Code (735 ILCS 5/2-1005 (West 2014)) or, in the alternative, for a judgment of foreclosure pursuant to section 15-1506 of the Code (735 ILCS 5/15-1506 (West 2014)) (summary judgment motion). The Bank's motion included a standard affidavit from a Bank representative stating that Key defaulted on the loan by failing to make required payments, and that the amount due as of March 31, 2015 was $129,266.36. The court entered and continued the motion to permit Key to submit a Rule 191(b) affidavit, which is used when a party wishes to assert that he needs additional time to respond to a motion for summary judgment because specified material is unavailable to him or has not yet been produced in discovery. See Ill. Sup. Ct. R. 191(b) (eff. Jan. 4, 2013). On October 15, the court entered an order setting a briefing schedule on the Bank's motion, including dates for Key to file a response and the Bank to file a reply. The order indicated that "Defendant's 191(b) affidavit is denied without prejudice." No proposed Rule 191(b) affidavit appears in the record.

¶ 6    The circuit court later granted Key leave to file his response to the Bank's motion over a month late. Key's response included his own affidavit stating: (1) after Key had complied with a trial repayment plan, the Bank granted a second modification of the loan in March 2012; (2) Key signed and returned the modification to the Bank "in a timely fashion"; (3) he paid the Bank $1,092.25 as required by the Bank's April 5, 2012, telephonic instructions; (4) he made further payments between April and July, 2012, in accordance with the Bank's invoices; (5) the Bank did not notify him that the second modification was "either reversed or even under review"; (6) a Bank representative told him, on July 16, 2012, that the "second modification was now under review due to an error that the Bank had made in the figures"; (7) a Bank representative later told him that the "second modification was being reversed over an approximately $300 miscalculation in the

Bank's calculation of the modification figures" and (8) the Bank refused his tender of an August, 2012 monthly payment and would only accept a reinstatement amount which exceeded $9,000.

¶ 7 Based on these assertions, Key argued that there was a material issue of genuine fact precluding summary judgment. In particular, he contended that there were conflicts between the Bank's standard prove-up affidavit and his own affidavit with respect to: (1) payments he made for April, 2012; (2) "other payments" listed on receipts attached to his affidavit; (3) "transfers of monies to and from unapplied totals are inaccurate"; and (4) the balance failed to "give credit for the Second Loan Modification which the Bank has signed and is bound by". In addition to his own affidavit, Key relied on various documents which are attached to his affidavit and referenced therein. Key's response contains no foundational authentication of these documents other than a cross-reference to them in his affidavit.

¶ 8 Key claimed that one of the attached documents, designated as Exhibit 2, was the second modification agreement in question. The exhibit consists of a four-page cover letter and an attached loan modification agreement.

¶ 9 The cover letter, which is dated February 12, 2012, is written in the familiar language of an offer of contract. The letter begins: "Enclosed is a proposed agreement to modify your loan". That sentence, in turn, references a footnote which states: "The enclosed terms are based upon information you provided to us and may be subject to validation." The next sentence in the main text states: "This modification agreement will not be binding or effective unless and until it has been signed by both you and Bank of America, N.A." The letter contains a summary of the terms of a "proposed modification" including a "new monthly payment" of $1,092.22, and it specifies the actions Key must take to "accept the proposed modification". These actions include sending the Bank a payment of $1,092.22 by certified check or money order, along with the signed

agreement, using an enclosed FedEx label, by March 3, 2012. However, another portion of the letter indicates that "First Payment Due under new terms April 1, 2012."

¶ 10     The letter also states: "Upon the modification agreement becoming binding and effective, the mortgage will be modified to reflect the following terms." It goes on to tell Key that, "[u]pon request," he may be required to provide additional income verification.

¶ 11     Most importantly, the cover letter contains the following admonition:

"If any issues arise between the date of this letter and the date on which all of the terms and conditions of this letter are finalized, including, but not limited to, deterioration in the condition of the property, lawsuits, liens, additional expenses and defaulted amount, then we may not sign the modification agreement and we may pursue all collection action [*sic*], including foreclosure.

This letter does not stop, waive or postpone the collection actions, or credit reporting actions we have taken or contemplate taking against you and the property. **In the event that you do not or cannot fulfill ALL of the terms and conditions of this letter no later than March 3. 2012. we will continue our collections actions without giving you additional notices or response periods."** (Emphasis in original).

The cover letter also states: "We look forward to receiving all required documents and your first payment prior to the document return deadline of March 3, 2012." It concludes with a standard complimentary close: "Sincerely, Home Loan Team Bank of America, N. A.", but does not bear the signature or name of any individual sender on behalf of the Bank.

¶ 12     The attached loan modification agreement is dated February 22, 2012. It indicates that it amends and supplements the original mortgage and note. It contains standard language reciting new terms for Key's repayment of his debt to the Bank. In particular, it states that Key "promises

to make monthly payments of principal and interest of U.S. $450.55 beginning on the 1st day of April, 2012." The agreement ends with two separate stand-alone signature pages. The first page, dated March 2, 2012, bears Key's notarized signature. The second page bears a heading indicating that it is for Bank of America internal use only. Below the heading, the unnotarized signature of Eric Blazewicz, whose position at the Bank is not stated, appears. Blazewicz's signature is dated May 10, 2012.

¶ 13    Key's affidavit indicates that he sent the second modification agreement to the Bank "in a timely fashion," but is silent with respect to whether he made the required payment before March 3, 2012. The affidavit does state that he sent a payment of $1,092.25 as requested by the Bank on April 5, 2012. Entries in an attached statement from the Bank reflect two credits on March 7, 2012: one for $1,000 and a second for $92.25. (In his brief, Key explains that the payment was split because of restrictions by the currency exchange which issued the money order.) Another Bank statement reflects an "April payment" of $1,034.63 on April 5, 2012 —which falls after the April 1 due date, which is less than the required amount, and which contradicts an assertion in Key's affidavit that his April 5 payment was for the full amount due of $1,092.25.

¶ 14    No copy of the Bank's reply brief in support of its motion for summary judgment appears in the record, although the record contains a notice of filing, indicating it was filed March 8, 2017.

¶ 15    The court entered and continued the Bank's motion from time to time. On April 5, 2017, the court entered another briefing schedule order providing for a sur-response and sur-reply, "limited to the supplemental loss mitigation affidavit of Michael Bennett". No such loss mitigation affidavit, sur-response, or sur-reply brief appears in the record. (In its brief in this court, the Bank explains that Bennett's supplemental loss mitigation affidavit was attached to the Bank's reply brief.)

¶ 16    After further proceedings not relevant to this appeal, on July 26, 2017, the court granted the Bank's motion for summary judgment and entered a judgment of foreclosure and sale. No transcript of the July 26 proceedings appears in the record.

¶ 17    Over the course of the next year, the court granted several motions to stay the judicial sale of the property, based on Key's representation that the parties were engaged in loss mitigation negotiations, each time over the Bank's objections. The court denied Key's fourth motion to stay the sale, which was supplemented by additional evidentiary materials regarding his efforts to leverage income from other rental properties he owned to refinance the subject property.

¶ 18    The property was sold on June 14, 2018 to the Bank's predecessor for an amount which left a deficiency of about $18,000. Key opposed the Bank's motion to confirm the sale, again asserting his compliance with the second modification agreement. In reply, the Bank argued that Key's response did not address any infirmity in the sale itself, but rather just repeated arguments which related to Key's stricken affirmative defenses and points which Key had unsuccessfully made in opposition to the Bank's motion for summary judgment.

¶ 19    On October 31, 2018, the court granted the Bank's motion for confirmation of sale. This appeal followed.

¶ 20                                    ANALYSIS

¶ 21    On appeal, Key argues that the circuit court erred in granting summary judgment to the Bank because there were material issues of genuine fact regarding whether he had complied with the terms of the second modification agreement. These issues concern whether Key made all the timely payments as required by the second modification agreement. Key also argues that it was unjust for the court to have approved the judicial sale of the property, in light of those claims and defenses.

¶ 22     The Bank argues: (1) Key waived his defense of payment because his affirmative defenses on that issue were stricken and never repleaded, and section 2-613(d) of the Code specifically defines payment as an affirmative defense that must be specifically pleaded in a breach of contract case; (2) the bank statements and other documents which Key attached to his response to the Bank's motion for summary judgment lacked sufficient foundation because they were not sworn to or certified as required by Illinois Supreme Court Rule 191(a) (eff. Jan. 4, 2013); (3) Key's affidavit failed to demonstrate that he complied with the terms of the Bank's modification offer by, among other things, making a payment by March 3, 2012; and (4) the court did not abuse its discretion in confirming the judicial sale.

¶ 23     In reply, Key argues, among other things, that: (1) his stricken affirmative defenses were grounded in the doctrines of unclean hands and equitable estoppel, but his response to the Bank's motion for summary judgment rested on a different ground—the factual basis of the bank's proofs; (2) the statements were sufficiently authenticated by Key's own affidavit which incorporated them by reference; (3) the Bank waived any objections to Key's affidavit by failing to raise the issue below; and (4) there remain material issues of genuine fact precluding summary judgment.

¶ 24     Despite the numerous points of alleged error, the appeal hinges on the circuit court's approval of two key orders: the order granting the Bank's summary judgment motion, which resulted in an order of foreclosure and sale; and the order confirming the judicial sale of the subject property. We first address the summary judgment order.

¶ 25     Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2–1005(c) (West 2018). Summary judgment is a drastic measure and should only be granted when the moving

party's right to judgment is "clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Where a reasonable person could draw divergent inferences from undisputed facts, summary judgment should be denied." *Id*. We review a circuit court's entry of summary judgment *de novo*. *Outboard Marine Corp.*, 154 Ill. 2d at 102.

¶ 26    Key's response to the Bank's summary judgment motion relied almost entirely on a series of attached statements, letters, and other documents generated by the Bank. Because it is dispositive, we first address the Bank's argument that the attached materials lacked a proper evidentiary foundation. Key contends that the Bank waived the foundational objection to the documents he submitted in opposition to summary judgment. But "waiver is a limitation on the parties, not on this court". *Collins v. Lake Forest Hospital*, 213 Ill. 2d 234, 239 (2004).

¶ 27    Supreme Court Rule 191(a) requires that responses to summary judgment motions "shall have attached thereto sworn or certified copies of all documents upon which the affiant relies ***." "Basic rules of evidence require that a party must lay the foundations for the introduction of a document into evidence." *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 247 (1991). To authenticate a document, evidence must be presented to demonstrate that document is what its proponent claims. *Gardner*, 213 Ill. App. 3d at 247-48. Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012) provides for the admission into evidence of business records in the following manner:

> "a memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the

9

custodian or other qualified witness, or by certification that complies with Rule 902(11), unless the source of information or the method or circumstance of preparation indicate lack of trustworthiness."

¶ 28 Here, the documents attached to Key's summary judgment response, almost all of which are documents generated by the Bank, are unsworn, uncertified, and entirely lack evidentiary support to be admitted as business records under Rule 803(6). Key's affidavit refers to these documents, but it does not indicate they are authentic copies of any originals he may have received. The affidavit also does not explain how, when, or where he received them. To properly authenticate a document, a party must present evidence that demonstrates that the document is what the party claims it to be. *Gardner v. Navistar International Transportation Corp*., 213 Ill. App. 3d 242, 247-48 (1991). Accordingly, these documents must be disregarded in considering whether the court properly granted summary judgment in favor of the Bank.

¶ 29 Section 15-1506(a)(2) of the Illinois Mortgage Foreclosure Act (735 ILCS 5/15-1506(a)(2) (West 2018)) provides: "where all the allegations of fact in the complaint have been proved by verification of the complaint or affidavit, the court upon motion supported by an affidavit stating the amount which is due the mortgagee, shall enter a judgment of foreclosure as requested in the complaint." Here, the Bank's motion for summary judgment included a standard prove-up affidavit from a Bank representative stating that she: (1) was familiar with the Bank's business records and had reviewed them; (2) could competently testify to the assertions in her affidavit; (3) determined the amount due as of March 31, 2015 to be $129,266.36 based on her review of the payment history and attached records; (4) the records accurately reflected any payments Key made on his account; (5) the records showed that Key defaulted on the note; and (6) in particular, the loan was two

months in arrears on July 1, 2011. This affidavit fulfilled the Bank's evidentiary burden under section 15-1506(a)(2).

¶ 30    We next consider whether Key's admissible evidentiary materials created a material issue of genuine fact to contradict the prove-up affidavit and attached records. Without the crucial second modification agreement, we are left to consider only the assertions in Key's affidavit. The affidavit, read in isolation, fails to create a material issue of genuine fact because it relies entirely on Key's compliance with the second modification agreement. Crucially, it does not address whether, as the Bank's prove-up affidavit claims, that the loan had generally been in default for some time.

¶ 31    Even if the attached materials were admissible, Key's evidence still fails to support his basic contention that he complied with the terms of the second modification agreement. As the Bank points out, Key's affidavit is ambiguous regarding exactly when he sent the March payment, and he admits that he made the April, 2012 payment—which was due on April 1—on April 5. See *supra* ¶ 9, 12. We thus cannot say that the circuit court erred in granting the Bank's motion for summary judgment.

¶ 32    We next address Key's challenge to the order confirming the judicial sale. Section 15–1508(b) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1508(b) (West 2018)) grants broad discretion to courts in approving or disapproving judicial sales. We review approval of judicial sales for abuse of discretion. *Household Bank, FSB v. Lewis*, 229 Ill. 2d 173, 178 (2008).

¶ 33    Section 15-1508(b) of the Code governs confirmation of judicial sales following foreclosures. It provides:

>    "Upon motion and notice in accordance with court rules applicable
>
>    to motions generally, which motion shall not be made prior to sale,

the court shall conduct a hearing to confirm the sale. Unless the court finds that (i) a notice [of the sale] *** was not given, (ii) the terms of sale were unconscionable, (iii) the sale was conducted fraudulently or (iv) justice was otherwise not done, the court shall then enter an order confirming the sale." 735 ILCS 5/15-1508(b) (West 2018).

¶ 34 Key faces an even greater burden to overturn the sale than he did with respect to the foreclosure. Our supreme court recently explained the principles applicable to a reviewing court's analysis when a mortgagor challenges a foreclosure by both moving to vacate the sale and challenging confirmation of the resulting foreclosure sale:

"To vacate both the sale and the underlying default judgment of foreclosure, the borrower must not only have a meritorious defense to the underlying judgment, but must establish under section 15-1508(b)(iv) [of the Code (735 ILCS 5/15-1508(b)(iv) (West 2010))] that justice was not otherwise done because either the lender, through fraud or misrepresentation, prevented the borrower from raising his meritorious defenses to the complaint at an earlier time in the proceedings, or the borrower has equitable defenses that reveal he was otherwise prevented from protecting his property interests. After a motion to confirm the sale has been filed, it is not sufficient under section 15-1508(b)(iv) to merely raise a meritorious defense to the complaint." *Wells Fargo Bank, N.A. v. McCluskey*, 2013 IL 115469, ¶ 26.

¶ 35 Key's challenge to the sale was based on the same defenses he made against the foreclosure and did not rest on any independent facts regarding the conduct of the sale itself. As such, it

necessarily fails for the same reasons as set forth in our analysis above regarding the motion for summary judgment.

¶ 36    We acknowledge that Key was justifiably frustrated in his dealings with the Bank, but we simply note that over the course of this case's eight-year lifespan, Key had ample opportunities to either refinance with another lender or demonstrate that he was a good candidate for refinancing with the Bank. Based on the record before us, we hold that the circuit court did not err in granting summary judgment to the Bank, or in confirming the judicial sale.

¶ 37    Affirmed.